JOSEPH S. BRADLEY & another *vs.* RUFUS H. BRIGHAM.

Middlesex.　January 22, 1889. — May 9, 1889.

Present : MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ

*Former Judgment — Election between Remedies — Conversion — Waiver of Tort — Estoppel.*

Assets of a partnership in a partner's possession at his death were sold for less than their value by his executor, who accounted for the proceeds as assets of the estate. The surviving partners, to recover their share of the proceeds, brought against the executor, as such, a bill in equity containing no averment that he had acted wrongfully or negligently in selling such assets, or sold them for less than their value, and, having recovered their proportion of such proceeds, brought an action against him personally for the conversion of such assets. *Held,* that the equity suit was founded on an affirmance of the sale, and was a bar to the action.

TORT by the plaintiffs, as surviving partners of the firm of Francis Brigham and Company, for the conversion of certain bonds as partnership property. The answer, among other things, set up a decree for the plaintiffs on a bill in equity brought by them against the defendant, as executor of the will of Francis Brigham, to recover the value of the same bonds.

At the trial in the Superior Court, before *Sherman,* J., on the issue whether the equity suit was a full bar and defence to the action, the following facts were agreed or admitted.

The firm of Francis Brigham and Company consisted of Francis Brigham and the plaintiffs, and was dissolved in 1865. Francis Brigham died on December 7, 1880, at which time the partnership accounts had not been fully settled. The defendant was duly appointed executor of his will, and the bonds in question came into his hands with the other assets of the estate of Francis Brigham. The bonds were issued by the Mexican government, and were never listed at the brokers' board in New York or Boston, and in an inventory of the estate, duly taken and returned into the Probate Court by the defendant, were stated to be of " doubtful value." The bonds were sold by the defendant, on August 29, 1882, through a firm of brokers in Boston, at private sale, and without notice to the plaintiffs, for

$2,475, or fifty per cent of their face and market value. No notice was given to the defendant by the plaintiffs that they claimed any ownership or interest in the bonds until October, 1883, when they made a demand on the defendant to deliver the bonds to them.

In October, 1883, the plaintiffs duly brought a bill in equity against the defendant, as such executor, to settle the partnership accounts, and to recover their share of the proceeds of the bonds and other partnership property. The bill contained the following allegations:

" First. That the plaintiffs and the said Francis Brigham, on or about the first day of October, A. D. 1850, entered into partnership under written articles of agreement. . . . In and by said articles it was agreed, among other things, that said partners should equally share the profits and equally bear the losses of their said partnership business.

" Second. Said partners carried on said business under said articles . . . until November 1, 1865, at which date said partnership was dissolved by mutual consent.

" Third. That there never has been any full settlement of said partnership business.

" Fourth. That soon after said dissolution, to wit, on or before the first day of January, 1866, all debts against said partnership were adjusted and paid, and all capital withdrawn, but there remained several unsettled claims due to said partnership, which it was agreed might be collected by either partner and the proceeds divided from time to time equally between said partners.

" Fifth. That on or about the first day of January, 1872, said Bradley received in part payment of one of said claims contracted prior to November 1, 1860, and due to said partnership, certain Mexican government bonds of the par value of $4,950, but which at that date were of little value in the market, and by the mutual consent of all of said partners said bonds were placed, with other papers belonging to said partnership, in the safe and in the possession of said Francis Brigham for safe keeping till such time as said partners might agree to make a division of the same, and said bonds remained in the possession of said Francis Brigham till his death.

"Sixth.  That on the seventh day of December, 1880, said Francis Brigham died, leaving a will, which was duly admitted to probate, and letters testamentary were issued to said Rufus H. Brigham, as executor of said will, and that as such executor said Rufus H. Brigham received and came into possession of the aforesaid articles, and also of said bonds, and that he has disposed of said bonds and received the proceeds thereof to the amount of six thousand dollars, and the plaintiffs are entitled to receive their share of said proceeds as stated herein, viz. one third to each, and interest thereon.  And the plaintiffs have duly demanded of said executor that he pay to them their share of said proceeds aforesaid, but he refused and still refuses so to do.

"Seventh.  That the plaintiffs have not come into possession of any partnership property except as aforesaid, but that the defendant and his said testator have received other property which said defendant ought to account for as a part of the assets of said partnership."

The prayer of the bill was as follows:

"First.  That a receiver may be appointed to take possession of said partnership assets, and that an account may be taken of all and singular said partnership matters, and that the defendant be directed to pay to the plaintiffs whatever sums shall be found due to them in respect to said partnership matters, with interest thereon.

"Second.  For such other and further relief as to your honors may seem meet."

The bill in equity was duly prosecuted, and a decree thereon was duly entered for the plaintiffs against the defendant, as such executor, for their share of the amount which he paid into the estate of Francis Brigham from the proceeds of the sale of the bonds, namely, $1,995.26 including interest, as debt, and against the defendant personally in the sum of $75.46, as costs. Executions issued thereon, and the same were paid and the judgments satisfied.

It was claimed on behalf of the defendant, that he acted in good faith, and believed when he sold the bonds that they belonged to the estate of his testator.

The jury, in reply to questions put to them as to the value of the bonds when demanded and when sold, stated that they were

then worth $4,950. The judge directed them to return a verdict for the plaintiffs in the sum of $1,650, being their share of the value of the bonds above the amount already paid them by the defendant, and reported the case for the determination of this court.

If the action could be maintained, judgment was to be rendered on the verdict; otherwise, judgment was to be entered for the defendant.

*J. G. Abbott & J. T. Joslin*, for the defendant.

*S. W. Trowbridge*, for the plaintiffs.

C. ALLEN, J. There is no doubt as to the general principles of law here involved; the only difficulty is in applying them to the peculiar facts of this case. If A.'s goods are wrongfully taken by B. and sold for a sum of money, A. has an election of remedies against B., and may sue him either for the conversion, or for the money had and received by him; but if he elects to sue him for the money had and received, the effect is to ratify the sale by B. as an act of agency, and A. cannot thereafter treat the taking of the goods as a wrongful act, but must accept the consequences of his affirmation of the sale. And so, in like manner, if A. does any act equivalent to suing for the money had and received, by which he treats the sale as valid and seeks to obtain the benefit of it as a valid sale, he cannot afterwards treat it as invalid for the purpose of obtaining a further advantage. *Le Breton* v. *Peirce*, 2 Allen, 8, 11. *Connihan* v. *Thompson*, 111 Mass. 270. *Smith* v. *Baker*, L. R. 8 C. P. 350. *Roe* v. *Mutual Loan Fund*, 19 Q. B. D. 347. *Lythgoe* v. *Vernon*, 5 H. & N. 180. *Brewer* v. *Sparrow*, 7 B. & C. 310.

But if, on the other hand, A. in pursuing his rights does not show an intention to affirm the taking or the sale, but repudiates the same, and merely seeks as far as possible to follow and reclaim his goods or their proceeds, in whole or in part, from those into whose hands they may have come, this will not have the effect to waive the wrongful taking, or cut him off from his remedy for the original conversion, but he will only be bound to apply in reduction of damages whatever he may have received. For example, if B., having wrongfully taken A.'s goods, has delivered a portion thereof to each of several persons, or has sold the whole or a portion thereof, and subdivided the proceeds, and

paid a portion to each of several persons who had knowledge of the facts, A. may follow the goods or their proceeds and recover from each person who received any goods or money, without thereby waiving his remedy against B. for the original wrongful taking. Regaining one out of twenty stolen horses, or the value of one, will not bar an action for the conversion of the rest. *Smith* v. *Baker*, L. R. 8 C. P. 350. *Burn* v. *Morris*, 4 Tyrw. 485; *S. C.* 2 Cr. & M. 579. *Browning* v. *Bancroft*, 8 Met. 278. *Greenfield Bank* v. *Leavitt*, 17 Pick. 1. In determining whether the pursuit of one remedy bars another, it may become a question of the intention of the party.

The defendant contends that the plaintiffs are barred from maintaining the present action by their former proceedings in equity. *Bradley* v. *Brigham*, 144 Mass. 181. The plaintiffs there brought a bill in equity for a final settlement of the accounts of a partnership whereof the defendant's testator was a member. The bill alleged that the partnership was dissolved on November 1, 1865, that on or before the first of January, 1866, all debts were paid and all capital withdrawn, but that there remained several unsettled claims due to the partnership, which it was agreed might be collected by either partner and the proceeds divided from time to time equally between the partners; that on or about January 1, 1872, certain Mexican bonds were taken in part payment of one of said claims, and placed in the hands of the defendant's testator for safe keeping till such time as the partners might agree to make a division of the same, and remained in his possession until his death, which was in 1880 ; that the plaintiffs had not come into possession of any partnership property, but that the defendant's testator had received other property, which ought to be accounted for as assets of the partnership ; that the defendant was executor, and as such executor came into possession of said bonds, and has disposed of the same, and received the proceeds thereof to the amount of $6,000, and that the two plaintiffs were entitled to receive their share of said proceeds, namely, one third to each, and interest thereon, and had demanded of the executor that he pay to them their share of said proceeds. The prayer was for a receiver, and that an account might be taken of all and singular said partnership matters, and that the defendant be directed

to pay to the plaintiffs whatever sums should be found due, etc. There was no averment that the defendant as executor had acted wrongfully or negligently in making sale of the bonds, or that they were sold for less than their value. For all that appears in the bill, the plaintiffs might have assented to the sale by the defendant. There was no suggestion that the plaintiffs wished to repudiate the transaction, and to reserve a right of action against the defendant for his tortious act, but meanwhile would seek to follow the assets into his hands as executor. On the other hand, the plaintiffs averred that the sale was made by the defendant in his capacity as executor, and that he held the proceeds, that is, the whole proceeds, in that capacity, and that they were entitled to their share of those assets. They admitted that he as executor was entitled to retain one third of the proceeds, and they merely sought to recover their two thirds. The whole aspect of the bill was, that, if the plaintiffs could obtain a decree for the payment of two thirds of the proceeds of the bonds, they would thereby obtain all that they were entitled to in respect to the whole transaction of selling the bonds. Their bill was founded on an affirmance of the sale of the bonds. They pursued that case to a final decree, contending indeed, in the final argument, that the estate was responsible for the full value of the bonds, but with no suggestion upon the record that they had mistaken their remedy, or wished in any manner to change the character of their bill.

The election and pursuit of the remedy in the former proceedings are a bar to the present action, and according to the terms of the report the entry must be,

*Judgment for the defendant.*