ROCK-OLA MANUFACTURING CORPORATION *vs.* MUSIC &
TELEVISION CORP. & another.

Suffolk.   April 7, 1959. — June 18, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Bailment.   Conversion.   Consignment.   Payment.   Contract,* Implied con-
tract.   *Practice, Civil,* Requests, rulings and instructions, Election.
*Corporation,* Corporate entity, Officers and agents.   *Evidence,* Rele-
vancy and materiality.

Ambiguous testimony in an action in which the trial judge found for the
plaintiff in an amount, with interest, allegedly due with respect to
phonographs shipped by the plaintiff to the defendant for sale on a
consignment account warranted a finding that the plaintiff had prop-
erly applied to an older open account with the defendant certain pay-
ments received from him without any specification by him of whether
they were to be applied to the open account or to the consignment
account. [421–422]

Refusal by a judge, who heard an action without jury and made only a
general finding for the defendant on a count of the declaration, to rule
as requested by the plaintiff that the evidence warranted a finding in
his favor on that count would be reversible error if a finding for him
thereon would have been warranted on the evidence. [422]

Evidence in an action would have warranted findings that a corporation,
to which the plaintiff shipped phonographs both on an open account
and on a consignment account under an agreement requiring it to
treat the proceeds of sale of consigned machines as trust funds and to
remit immediately therefrom the invoice value of the machines, made
sales of consigned machines and transmitted to the plaintiff only cer-
tain payments which, in the absence of specification of their applica-
tion, were properly applied by the plaintiff to the open account, and
that in the circumstances the sale of the consigned machines consti-
tuted a conversion thereof by the corporation and by one in control of
it who participated in its tortious conduct. [422–423]

Where one converted goods held by him for sale on consignment by selling
the consigned goods without remitting to the consignor the invoice
value thereof as required by the consignment agreement, the consignor
was entitled to waive the tort, affirm the sales, and recover the proceeds
thereof from the consignee as money had and received. [423]

In an action against a corporation and one in control of it through being
its sole stockholder and its president, treasurer and general manager,
evidence of the circumstances in which the individual defendant caused
the corporation to convert phonographs consigned to it by the plain-
tiff for sale by failing to remit the invoice value of machines sold and

became personally liable to the plaintiff for such conversion did not reveal any occasion for disregarding the corporate entity and holding the individual defendant liable on a count against him in the declaration for money had and received where findings were not warranted that the individual defendant ever possessed the phonographs or the proceeds of their sale in his own behalf rather than in behalf of the corporation. [424]

Under G. L. c. 231, § 7, Sixth, as appearing in St. 1939, c. 67, the plaintiff in an action, prior to the making of findings, could not be required to elect between a cause of action stated in his declaration in a contract count and an inconsistent cause of action arising out of the same matter stated in a separate tort count. [425–426]

In an action against a person in control of a corporation and the corporation with separate counts in the declaration against each defendant for money had and received from the sale of phonographs shipped by the plaintiff to the corporate defendant for sale on a consignment account and for conversion of the machines sold, a finding for the plaintiff against the corporate defendant on the count against it for money had and received did not relieve the trial judge of the necessity of acting on requests for rulings referring to the other three counts and making findings with respect to them. [426–427]

At the trial of an action for conversion of phonographs consigned by the plaintiff to the defendant for sale and sold by the defendant without remitting to the plaintiff the invoice value thereof as required by the consignment agreement, testimony by the plaintiff's credit manager that the invoice figures on the consigned machines were "the fair market value of" the machines was relevant. [427]

TORT AND CONTRACT. Writ in the Superior Court dated December 12, 1955.

The action was heard by *Meagher*, J.

*Franklin N. Flaschner*, for the plaintiff.

*Edward C. Park*, (*William N. Wheeler* with him,) for the defendants.

CUTTER, J. This is an action in four counts by the plaintiff (hereinafter called Rock-Ola) against Music & Television Corp. (hereinafter called M & T) and one Golumbo, M & T's sole stockholder, its president, treasurer, and general manager, and a director. The action was tried before a judge of the Superior Court without a jury.[1] In

---

[1] At the same time was tried another action by Rock-Ola against M & T on an account annexed to recover the amount, $53,786.97, claimed to be owing on eight invoices dated from October 20, 1954, through February 24, 1955, for phonographs and on a number of other invoices for merchandise and parts. In this other action, the judge found for Rock-Ola in the sum of $61,344.04, including interest.

Rock-Ola Mfg. Corp. *v.* Music & Television Corp.

the present action, count 1 was against M & T upon an account annexed for $36,693 showing sums owing upon eleven invoices between March 3, 1955, and July 1, 1955, inclusive. The judge, on count 1, found for Rock-Ola in the sum of $39,460.16 including interest. Count 2 was upon the same account annexed against Golumbo. Count 3 alleged that M & T converted to its own use certain property consisting of fifty-three phonographs worth $36,693. Count 4 was a similar count, alleging conversion, against Golumbo. The trial judge found for the defendants on counts 2, 3, and 4. Rock-Ola's bill of exceptions presents (in addition to certain exceptions waived at the arguments) the question whether the trial judge properly denied Rock-Ola's (a) requests for rulings numbered 2, 6, and 7 in substance that the evidence warranted a finding for Rock-Ola against Golumbo on counts 2 and 4 and against M & T on count 3, and (b) request numbered 3, that Rock-Ola may recover on count 2 if Golumbo participated in the unauthorized use of trust funds. An exception to the exclusion of certain evidence offered by Rock-Ola is also presented.

Golumbo testified that Rock-Ola sold phonographs, and apparently other merchandise, to M & T both on open account and on consignment. The sums claimed by Rock-Ola in the companion case (see footnote 1, *supra*) were for items delivered to M & T on open account and there was due from it to Rock-Ola for these items, $53,786.97. In the action now before the court each of the items listed in the account annexed represented phonographs received by M & T on consignment and sold by M & T by Golumbo or under his direction, "on sales . . . for which he received at least $36,693."

Under the Rock-Ola distributor's agreement for 1955, consignment shipments to distributors were permitted.[2]

[2] The contract which M & T as distributor had with Rock-Ola provided that M & T "shall keep all such consigned . . . equipment separate . . . from his own property . . . and shall clearly mark [it] . . . to show that it is the property of Rock-Ola." The contract also required M & T "immediately upon the sale of any item of consigned equipment to remit to Rock-Ola out of the proceeds of such sale an amount not less than the then current distributor's price for such item, the excess over such distributor's price to be

The items so consigned remained the property of Rock-Ola until "1. An order for the purchase of such item has been accepted by Rock-Ola; 2. Rock-Ola has received out of the proceeds of the sale . . . not less than the current distributor's price thereof, and; 3. Such item has been delivered to the purchaser." Neither Golumbo nor M & T ever sent to Rock-Ola a purchase order for acceptance by Rock-Ola in connection with any consigned phonograph, nor does the record indicate that Rock-Ola made any complaint at M & T's failure to do so.

The consignment procedure was changed by Rock-Ola on February 25, 1955, to provide for arrangements described by Rock-Ola in a letter to M & T of that date, as follows: "Under this consignment plan, after machines are shipped, you will receive an invoice with a consignment billing. When your remittance is received, we will issue a credit memo to your consignment account and also a cash invoice on a 'do not ship' basis. All machines shipped on consignment must be purchased and converted to a 'sale' under our regular 60 day terms.[3] This new method of billing will not change or restrict in any way your present method of doing business nor will it apply to any machines shipped prior to March 1, 1955. When received, all machines shipped to you on and after March 1st, must be kept separate from your own inventory."

Golumbo further testified that "having collected upon sales of consigned goods at least $36,693, . . . he turned . . . that trust money over to . . . [Rock-Ola] by . . . checks; that at the time . . . there were in existence . . . obligations . . . on open account and . . . under the consignment account; that the obligations under the open ac-

retained by distributor as his compensation for making such sale. Distributor shall keep the proceeds of the sale of all consigned merchandise as trust funds, separate . . . from his own funds . . . shall in no way commingle such trust funds with his own funds . . . and shall clearly identify such trust funds to show they are the property of Rock-Ola."

[3] The meaning of this sentence is ambiguous and could have been explained by parol evidence. On the present record, the judge was not required as a matter of law to rule that it meant either (a) that consigned merchandise held by M & T for sixty days must be purchased, or (b) that, upon the sale of consigned merchandise, M & T could hold the proceeds for sixty days before transmitting the proceeds.

count were . . . older . . . than those . . . under the consignment account; that . . . [he] knew the moneys . . . from the sale of . . . consigned goods were trust moneys . . .; that he did not designate on any of the checks that they were trust funds rather than payments on the older open account; that each check was forwarded . . . with a letter . . . and that no letter . . . asked that any . . . money be applied to the trust account." Golumbo said that "between March and October of 1955, he spoke" with Campen, Rock-Ola's credit manager and head of its collection department, by telephone "frequently" and asked Campen "on practically every occasion to apply what checks were being sent to him to our consigned account." On cross-examination, this testimony was limited by Golumbo to "some occasions, more than one or two." Campen testified that Golumbo "never asked to apply any checks to the trust account."

Golumbo identified checks shown by the checks themselves to be for an aggregate amount of $35,409.68 (hereinafter, because their application by Rock-Ola to the open account was disputed, for convenience called the disputed checks)[4] dated between April 15 and October 21, 1955, referred to below. He also identified an inventory (as of May 31, 1955) showing five consigned phonographs in M & T's possession, and twenty-three consigned phonographs "out on approval — our [M & T's] responsibility." In this inventory Golumbo had acknowledged in behalf of M & T "possession, control and responsibility to you [Rock-Ola] for . . . [the above mentioned] phonographs belonging to you, which the undersigned has . . . received . . . upon consignment and now holds . . . having agreed to hold in trust the proceeds of the sale of each item and to remit to you out of the proceeds of such sale the amount . . . below set opposite each item."[5]

---

[4] At various places in the bill of exceptions the total of these checks, because of a mistake of listing and addition, is referred to as $36,554.

[5] The aggregate amount to be remitted upon the sale of the machines shown in this inventory as of May 31, 1955, was $18,411. According to the account annexed, prior to May 31, 1955, there had been aggregate consign-

Golumbo admitted that he knew, at least at the time of the trial, that M & T had been credited on the open account with the total of the disputed checks. The evidence, as stated in the record, is by no means clear but would warrant an inference that M & T had learned in some way, even prior to trial, that Rock-Ola had elected to apply the disputed checks on the open account. See Restatement: Contracts, §§ 388, 389, 391; Williston, Contracts (Rev. ed.) §§ 1795–1800; Corbin, Contracts, § 1231. Campen testified that he "had authority to apply funds received from distributors to the oldest open items . . . and it was his general practice to apply receipted funds in this manner in the absence of any indication as to specific application."

Although the testimony as stated in the record is ambiguous, we think that the trial judge would have been warranted in finding that as much as $35,409.68 had been properly applied by Rock-Ola on the old open account (which amounted to $81,000 as of April 30, 1955,) between April 15 and October 21, 1955, on account of checks received from M & T without any specific indication by M & T of the account to which they were to be applied.[6] His ultimate findings for Rock-Ola on count 1 for more than the full

ment shipments to M & T invoiced at $22,733. If, as seems likely, the phonographs covered by one invoice dated May 27, 1955, had not been received by M & T by May 31, 1955, and if they were not included in the inventory, the total invoice price of the consignments to that date would have been only $19,243. Six of the disputed checks in the aggregate amount of $30,460 had been dispatched to Rock-Ola prior to May 31, 1955. Rock-Ola argues that checks in this large sum could hardly have been intended to be payments only for the relatively few items in the consignment account which had then been sold. If they were payments for consignment merchandise, they must have been payments in advance of the final sale of a substantial number of items. On the somewhat ambiguous record the judge would have been warranted in drawing inferences consistent with Rock-Ola's argument. Comparing the consignment shipments as shown on the account annexed with the consigned merchandise for which M & T was still accountable as of May 31, it would seem that M & T on May 31 had then finally sold only $4,322 worth of consigned merchandise if it had then received the May 27 shipment, and only $832 worth, if it had not then received the May 27 shipment. Of course, M & T may have transmitted receipts from payments on machines "out on approval" which had been paid for, subject to return if found to be unsatisfactory.

[6] The only payments received on the consigned account, according to Campen's testimony, were two checks of October 10 and 28 (not included in the disputed checks) which reduced the amount due for consigned merchandise on the account annexed to $34,599.

amount of the balance due on the consignment account suggest that he did in fact find that Rock-Ola had properly applied the disputed checks on the open account. Certainly the judge could have found that of the disputed checks transmitted to Rock-Ola prior to May 31, 1955, those in excess of the invoice value of consigned machines then finally sold were to be applied upon the open account, for he could have found that the open account was then the only account for which there was a matured indebtedness except for the amount of the final sales of consigned merchandise.

1. Rock-Ola by its requests numbered 2, 6, and 7 sought to have the judge instruct himself that there was evidence that would warrant findings for Rock-Ola on counts 2, 3, and 4. The denial of the requests "involved a ruling as matter of law that there was no [such] evidence." If there was such evidence, Rock-Ola was entitled to the ruling requested "or to . . . findings of facts showing that the requested ruling had become irrelevant." *Bresnick* v. *Heath*, 292 Mass. 293, 298–299. *Quality Finance Co.* v. *Hurley*, 337 Mass. 150, 152, 157. The trial judge unfortunately did not disclose the basis of his action in denying the requests by making explicit findings of the facts relied upon by him. *Ofgant-Jackson Chevrolet, Inc.* v. *MacQuade*, 338 Mass. 144, 149.

2. There was evidence which would have warranted the trial judge in finding (a) that M & T, acting through Golumbo, made sales of at least a large part of the consigned phonographs without transmitting at once from the proceeds to Rock-Ola the amount shown on the consignment invoice against the item sold; (b) that all or a part of the disputed checks were not transmitted to Rock-Ola as the proceeds of sales of consigned items (see footnote 5, *supra*); and (c) that there had been no statement in behalf of, or conduct by, Rock-Ola which in any way relieved M & T [7]

---

[7] On this record, there are involved no rights of third persons, as to which see G. L. c. 104, as amended. See Restatement 2d: Agency, § 175. The present cause of action arose before the enactment of the Uniform Commercial Code. See G. L. c. 106, §§ 2 — 326, 2 — 327, as appearing in St. 1957, c. 765, § 1; 4 Annual Survey of Mass. Law (1957) § 3.5.

of the obligation under its distributor's agreement to treat the proceeds of sale of consigned items as trust funds and to make prompt payment of such proceeds (up to the consignment invoice price) as a condition of its authority to sell the item. Sale of consigned items under the circumstances could constitute a conversion by M & T and also by Golumbo, who could be found to have participated in M & T's tortious act. *Refrigeration Discount Corp.* v. *Catino,* 330 Mass. 230, 233–236. Although the case last cited dealt with merchandise held for sale under trust receipts, as between Rock-Ola as bailor and M & T as bailee, the situation there was analogous to the consignment arrangement here considered. See *Crohon & Roden Co. Ltd.* v. *Rudnick,* 232 Mass. 555, 557; Restatement: Torts, §§ 223, 232, 234, 888;[8] Restatement 2d: Agency, §§ 349, 402. See also *Coe* v. *Ware,* 271 Mass. 570, 573; *General Exch. Ins. Corp.* v. *Driscoll,* 315 Mass. 360, 365; *New England Box Co.* v. *Gilbert,* 100 N. H. 257, 259; *McDonald* v. *First Natl. Bank,* 353 Pa. 29, 32; Williston, Sales (Rev. ed.) § 338; Prosser, The Nature of Conversion, 42 Corn. L. Q. 168, 179; Annotation, 152 A. L. R. 696, 705. Cf. *Handy* v. *Miner,* 258 Mass. 53, 63; *Kabatchnick* v. *Hanover-Elm Bldg. Corp.* 331 Mass. 366, 368–369.

It may be that other findings would have been warranted on the evidence, as, for example, that in correspondence or conversations with Golumbo or otherwise Rock-Ola had consented to a variation of the consignment arrangement, but findings for Rock-Ola on each of the counts (3 and 4) in tort, standing alone, would have been warranted. Requests numbered 6 and 7 should have been given.

3. Where there has been a conversion by actual sale of property subject to a bailment, the bailor may waive the tort, affirm the sale, and recover the proceeds as money had and received. See *Jones* v. *Hoar,* 5 Pick. 285, 290; *Welsch* v. *Palumbo,* 321 Mass. 399, 402, and cases cited; *McDonald* v. *First Natl. Bank,* 353 Pa. 29, 32–33; Restatement: Restitu-

[8] See also Restatement 2d: Torts, §§ 222A, 232 (Tent. Draft No. 3, Apr. 18, 1958).

tion, § 128, esp. comments c, f, h, l. Cf. *Stadmiller* v. *Schirmer*, 248 Mass. 244, 248–249. The judge's finding on count 1 for Rock-Ola against M & T for the proceeds of the sale of the consigned items must have been based on this principle.

Golumbo contends in respect of count 2 that he individually did not receive the benefit of the proceeds of the sale of the consigned items, although he was sole stockholder, president, treasurer, and general manager of M & T and controlled it. His situation, of course, was different from that of a corporate officer or employee, not in control of a corporation, who might participate in a routine manner in sales of consigned merchandise in the regular course of business and serve in good faith as a conduit of the proceeds to the corporate treasury. Cf. *Burbank* v. *Farnham*, 220 Mass. 514, 519; *Lipson* v. *Purtell*, 290 Mass. 171, 173. Cf. also cases discussed in *Proctor* v. *Norris*, 285 Mass. 161, 165–166. The evidence, however, reveals no occasion for disregarding the corporate entity of M & T with which Rock-Ola at all times dealt, knowing it to be a corporation. Even though Golumbo could have been found, under the conversion counts, to have caused by his control of M & T the conversion (if there was one) of Rock-Ola's consigned phonographs and to be liable for any such conversion, the evidence did not warrant a finding that any possession of these phonographs prior to their alleged conversion was in Golumbo's own behalf rather than in behalf of M & T. The evidence also does not warrant a finding that Golumbo as an individual received the proceeds of the sale of the consigned phonographs or put them in his own pocket or to his own account. So far as appears, they were received and held by M & T as a corporation and not by Golumbo otherwise than as M & T's representative. Upon the evidence, there thus was no such possession of the phonographs or receipt of proceeds by Golumbo himself (as distinguished from M & T as a corporation) as would make him individually liable under count 2. See Restatement: Restitution, § 128, comment e (and see comment f) and note pp. 595–

596; Corbin, Waiver of Tort and Suit in Assumpsit, 19 Yale L. J. 221, 226–227. See also *Rabinowitz* v. *People's Natl. Bank*, 235 Mass. 102, 103–104; *Trafton* v. *Custeau*, 338 Mass. 305, 308. Cf. *General Exch. Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 364–365. Cf. also *Sherman* v. *Werby*, 280 Mass. 157, 160–161; *Flavin* v. *Morrissey*, 327 Mass. 217, 220. Request numbered 2 (that a finding for the plaintiff on count 2 was warranted) could not have been given. The judge could properly deny request numbered 3 as being insufficiently related to specific assumptions of fact and as too general in terms.

4. Golumbo and M & T contend that there would be an inconsistency between recovery under count 1 for money had and received, and recovery under counts 3 and 4 for conversion. General Laws c. 231, § 7, Sixth, as appearing in St. 1939, c. 67, provides, "Causes of action in contract and in tort shall not be joined, except when they arise out of the same matter, and in such case they shall be stated in separate counts and be . . . determined together, and the plaintiff shall not be required to elect between them." Nothing in the legislative history of the 1939 amendment (see 1939 House Docs. 431, 2027; 1939 House Journal, p. 530) suggests that the language of the clause was intended to be construed narrowly. The clause expressly eliminates, in cases to which it applies at all, any obligation to elect. See *Vieira* v. *Menino*, 322 Mass. 165, 167. See also *Vigoda* v. *Barton*, 338 Mass. 302, 305. Prior to the 1939 statute the judge doubtless could have required Rock-Ola, at least at the close of the evidence, to elect whether to proceed on counts 1 and 2 or on counts 3 and 4. See *Mullaly* v. *Austin*, 97 Mass. 30, 33–34; *Clapp* v. *Campbell*, 124 Mass. 50, 51–52, as explained in *New Haven & Northampton Co.* v. *Campbell*, 128 Mass. 104, 105–106; *Bradley* v. *Brigham*, 149 Mass. 141, 144, 146; *Whiteside* v. *Brawley*, 152 Mass. 133, 134–135. Cf. *Clare* v. *New York & New England R.R.* 172 Mass. 211, 213–214. Even such an election was not formerly required at any early stage of the case. See *Miller* v. *Hyde*, 161 Mass. 472, 475–476. Today, to require an election between the tort and

contract counts, prior to findings for or against each defendant on the several counts, would disregard the mandate of the Legislature in G. L. c. 231, § 7, Sixth, in a case to which that clause is applicable. There is no indication in the record that the trial judge at any time required Rock-Ola to elect among the four counts in any way, even as between the two contract counts to which § 7, Sixth, would not be applicable.

Recovery for money had and received (in circumstances like those here presented) is on a theory inconsistent with that underlying recovery for conversion. See *Bradley* v. *Brigham*, 149 Mass. 141, 144. Cf. *Whiteside* v. *Brawley*, 152 Mass. 133, 134–136; *Dalton* v. *American Ammonia Co.* 236 Mass. 105, 107–110. We assume (without deciding) that Rock-Ola, if it obtains a finding on either count 3 or count 4, or both of them, in addition to a finding on count 1 (or on count 2 if the evidence at a new trial should warrant such a finding), may be required to elect whether it wishes to have judgment only on those tort counts, or only on those contract counts, on which it eventually prevails, so that separate judgments, based on inconsistent theories, against the same person for the same acts, will not be outstanding simultaneously. See analogy of *Lawrence* v. *O'Neill*, 317 Mass. 393, 398; *Moskow* v. *Smith*, 318 Mass. 76, 79. We recognize, of course, that, if Rock-Ola recovers on more than one count, it cannot be permitted in the circumstances (since all counts relate to the same cause of action) to collect more than the maximum amount recoverable from either defendant, after giving each credit for actual collections from the other. See *Perry* v. *Oliver*, 317 Mass. 538, 540; Restatement: Restitution, § 147. See also Restatement: Judgments, §§ 95, 100, comment a, 125, comment d. Because G. L. c. 231, § 7, Sixth, is applicable, however, Rock-Ola is entitled to a decision (either for or against it) on all counts on which a finding for it is warranted, without making any election prior to the decision of the case. Accordingly, the trial judge's finding for Rock-Ola against M & T on count 1 (money had and received) did not relieve him of the neces-

sity of ruling on requests with reference to the other three counts and making findings with respect to them. See Restatement: Restitution, § 144.

5. On redirect examination by Rock-Ola's counsel, Campen, Rock-Ola's credit manager, testified that the invoice figures on the consigned phonographs were "the fair market value of these machines." Subject to the exception of Rock-Ola, the question and answer were struck from the record and an offer of proof was made. Although the exclusion of this testimony, offered first upon redirect examination, was within the discretion of the trial judge (see *Chase* v. *Chase*, 271 Mass. 485, 491), it would have been more appropriate to have admitted it as testimony omitted on direct examination. It was highly relevant upon the conversion counts, and no prejudice would have been caused to the defendants by receiving this testimony when it was offered. Wigmore, Evidence (3d ed.) §§ 1896–1900. Cf. *Lawrence* v. *O'Neill*, 317 Mass. 393, 397 (where the exclusion of an explanation of an answer made on cross-examination was held erroneous). Even without this testimony there was ample evidence of damages to support recovery on the conversion counts. The measure of damages for the conversion (in the absence at least of special circumstances not here shown to be present) was the fair market value of the machines when sold by Golumbo. See *Welsch* v. *Palumbo*, 321 Mass. 399, 403; *Manhattan Clothing Co. Inc.* v. *Goldberg*, 322 Mass. 472, 475–476. Cf. Restatement: Torts, § 927, comment h; Restatement: Restitution, §§ 151, 154. Golumbo had testified that he had in fact received at least the aggregate invoice prices of the consigned items for the sale of some fifty-three machines. This in itself was sufficient evidence of minimum market value to warrant recovery of at least this amount.

*Exceptions sustained.*