**NORTHWEST CIVIC GROUP, Appellee,**

v.

**BERNSTEIN et al., Appellants.**

[Cite as *Northwest Civic Group v. Bernstein* (1993), 91 Ohio App.3d 18.]

Court of Appeals of Ohio,
Montgomery County.

No. 13691.

Decided Oct. 5, 1993.

*Deborah D. Hunt,* for appellee.

*Paul M. Courtney,* for appellants.

WILSON, Judge.

The plaintiff-appellee, Northwest Civic Group, is an unincorporated association of people whose members are homeowners in Cedar Knolls Acres, Section One, subdivision, in Randolph Township. The defendants-appellants, Idah J. Bernstein, Dorthorie J. Bernstein and Marcia B. Alpert, are real estate agents who purchased Lot 31 in the subdivision with the purpose of converting the residence on the lot into a real estate sales office.

Cedar Knolls Acres was platted in 1953. It contains approximately sixty lots. About one sixth of the lots front on Route 48 on Main Street. The remaining lots are at least one lot removed from Main Street. Lot 31 is on the corner of Main Street and Hill Grove Avenue.

Interstate 70 was constructed to the north of the subdivision since it was platted. The Main Street area near the plat has seen considerable commercial development since 1953. However, the area within the subdivision has remained virtually unchanged.

Cedar Knolls Acres subdivision plat contains fourteen covenants. Covenant 1 provides:

"All lots in this tract shall be known as described as residential lots. No structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single family dwelling, not to exceed two and one-half stories in height and a private garage for not more than two (2) cars."

On April 2, 1992 the Trustees of Randolph Township approved a zoning change for Lot 31 from R–2 residential to PD-office.

On May 20, 1992 plaintiff filed its complaint seeking injunctive relief and a declaration that the covenants limit the defendants' use of Lot 31 to residential purposes.

The defendants have appealed from a judgment declaring Covenant 1 to limit the use of Lot 31 to residential uses and enjoining the defendants from using the lot for other purposes. There are three assignments of error.

I. "The trial court erred as a matter of law by finding the restrictive covenant prohibited defendants' use of the improved real estate as an office, and by granting an injunction and entering declaratory judgment for plaintiff based on that finding."

II. "The trial court erred as a matter of law by failing to apply the correct standard of law regarding the rule of changed circumstances as applied to deed restrictions."

III. "The trial court erred in entering judgment against appellants where the evidence was insufficient as a matter of law and the judgment was against the manifest weight of the evidence."

The first assignment of error states the primary issue before us.

■ Hornbook law requires courts to view the covenants in their entirety and to strictly construe the covenants against limitations upon the use of land.

■ Other covenants pertinent to the issues before us provide:

"3. No building shall be located nearer to the front lot line or nearer to the side street line than the setback lines shown on the recorded plat. (No building or part thereof, shall be erected on any lot less than 35 feet to any side street line.) All buildings erected for dwelling purposes shall provide a total of not less than 15 feet of side yard space. Said side yard space may be divided unevenly provided no portion of any building is erected closer than 5 feet to any lot line.

" * * *

"5. No trailer, basement, tent, shack, garage, barn, or other out-building erected in the tract shall at any time be used as a residence temporarily or permanently, nor shall any structure of a temporary character be used as a residence.

"6. No noxious or offensive trade shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

Covenants 1 and 3 limit the type and location of structure on the lots. Strictly construed, they do not specifically limit the use of the lots.

Covenant 5 prohibits the use of nonresidential type structures for residences, and Covenant 6 prohibits the use of lots for noxious or offensive trades.

Construing the covenants as required by the rules of construction, we are required to sustain the first assignment of error.

The last two assignments of error were made in the event the first assignment of error would be overruled.

The first assignment of error having been sustained, the remaining assignments of error are moot and are overruled.

We reverse the judgment of the trial court and declare that the restrictive covenants of Cedar Knolls Acres, Section One, subdivision, do not prohibit the use of Lot 31 for a real estate office.

*Judgment reversed.*

FAIN, J., concurs.

GRADY, P.J., dissents.

RICHARD K. WILSON, J., retired, on the Second Appellate District, sitting by assignment.

GRADY, Presiding Judge, dissenting.

I must dissent from the decision of the majority. I find that Covenant 1 prohibits the use proposed by appellants.

When ambiguities exist in a real estate covenant, all doubts should be resolved against a possible construction which would restrict the free use of the land. *Bove v. Giebel* (1959), 169 Ohio St. 325, 8 O.O.2d 341, 159 N.E.2d 425. However, in construing restrictive covenants ordinary meanings as well as ordinary rules of construction apply, and "[t]he first and most fundamental of these rules of course is that of arriving at the intention of the parties * * *." *Hitz v. Flower* (1922), 104 Ohio St. 47, 57, 135 N.E. 450, 453. The entire context must be considered, and restrictive covenants should be construed reasonably so as to effect the purpose for which they were intended.

A provision is ambiguous if it is open to several possible meanings or interpretations. Because restrictive covenants are binding when they appear in a plat dedication, to be fatal an ambiguity in the recitation must be in the object the parties intended to achieve. Covenant 1 lacks the precision that scriveners of such provisions usually strive for, but that does not make its object or meaning ambiguous.

Covenant 1 does not, reasonably, limit only the *type* of structure that may be erected on the subdivision's lots; it limits the use that may be made of that structure, as well. Indeed, to the extent that it limits the type it also limits the use, because in this case the adjective "residential" necessarily implies a type of structure that is determined by its use. Covenant 1 identifies that use as a "single family dwelling," which limits the occupancy to specific residential purposes and wholly excludes the commercial occupancy and purposes proposed by the appellants. There is no ambiguity.

It is readily evident that the developer who adopted Covenant 1 and the owners who have purchased lots in the Cedar Knolls Acres subdivision through the forty years of its history have all intended to exclude a commercial use of the kind proposed. The integrity of the subdivision as a limited use district has been strictly maintained by all those persons, who have limited their uses to residential uses. Any inexactitude in the plat restriction is superseded by this experience when the intent of the parties is an issue.

On this record, I find that the trial court committed no error when it held that the use proposed by appellants is prohibited by Covenant 1. I would affirm.