[Cite as *Kinzel v. Ebner*, 2020-Ohio-4165.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Judith A. Kinzel, Trustee

       Appellee/Cross-Appellant

v.

Douglass Ebner aka Douglas
Ebner and 2253 Cedar Point, LLC
and 2243 Cedar Point, LLC

       Appellants/Cross-Appellees

v.

Richard L. Kinzel and
City of Sandusky

       Appellees

Court of Appeals Nos. E-19-033
E-19-034

Trial Court No. 2017 CV 0554

**DECISION AND JUDGMENT**

Decided: August 21, 2020

\* \* \* \* \*

Michael Braunstein, Clinton P. Stahler, Aaron E. Kenter and
Matthew L. Strayer, for appellee/cross-appellant.

Charles A. Bowers, Stephen M. O'Bryan, Cary M. Snyder and
Matthew B. Barbara, for appellants/cross-appellees.

Frank H. Scialdone, for appellee city of Sandusky.

John H. Burtch and Robert J. Tucker, for amicus curiae The
Ohio Realtors®.

Christina Sandefur and Christopher A. Holecek, for amicus
Curiae Goldwater Institute.

* * * * *

**MAYLE, J.**

{¶ 1} This case is before the court upon consolidated cross-appeals from the April 22, 2019 judgment of the Erie County Court of Common Pleas. Defendants-appellants/cross-appellees are Douglass Ebner, aka Douglas Ebner, 2253 Cedar Point, LLC, and 2243 Cedar Point, LLC (collectively, "Ebner"). Plaintiff-appellee/cross-appellant is Judith Kinzel ("Kinzel"), Trustee under the Judith A. Kinzel Trust Agreement (dated August 13, 1989, amended on June 25, 1997, amended on January 5, 1999, restated on January 17, 2002 and amended and restated on September 1, 2006 and amended on the 23rd day of October 2015) ("the Kinzel Trust"). Counterclaim defendants-appellees are Kinzel's husband, Richard Kinzel, and the city of Sandusky. Ohio Realtors and Goldwater Institute have filed briefs of amicus curiae in support of Ebner.

{¶ 2} For the reasons that follow, we affirm the trial court judgment, in part, and reverse, in part.

## I. Background

{¶ 3} Kinzel is the trustee of the Kinzel Trust, which owns property located at 2267 Cedar Point Road in Sandusky, Ohio—Lots 14 and 15 of the Laguna Subdivision ("the Kinzel property"). Ebner is the sole member of limited liability companies that own 2253 Cedar Point Road—Lot 12 of the Laguna Subdivision ("Lot 12")—and 2243 Cedar Point Road—Lot 13 of the Laguna Subdivision ("Lot 13"). All three homes are

2.

beachfront properties, situated along the shore of Lake Erie, and are located on the Cedar Point Chaussee, a narrow strip of land that connects Cedar Point Amusement Park peninsula to the city of Sandusky. The Kinzel property is directly adjacent to the amusement park.

{¶ 4} Kinzel acquired her property in 1987. Ebner acquired his properties in 2013 and 2015. He and his family reside in the home on Lot 12, but he offers it for short-term vacation rentals when he is out of town. Lot 13—which is located next door to the Kinzel property—is used almost exclusively for short-term vacation rentals.

{¶ 5} Kinzel filed a complaint for injunctive relief and damages against Ebner, alleging that Ebner's use of Lots 12 and 13 for short-term vacation rentals violates deed restrictions and Sandusky Municipal Ordinance Nos. 12-107 and 17-088. Her seven-count complaint against Ebner alleged: (1) breach of restrictive covenants (Count I); (2) violation of Sandusky Municipal Ordinance Nos. 12-107 and 17-088 (Count II); (3) absolute nuisance—ordinance violations (Count III); (4) absolute nuisance—intentional acts (Count IV); (5) qualified nuisance (Count V); (6) preliminary and permanent injunction (Count VI); and (7) punitive damages (Count VII).

{¶ 6} The city issued Ebner formal notices of violations of Sandusky Municipal Ordinance Nos. 12-107 and 17-088. In August and October of 2017, it filed criminal complaints against him in Sandusky Municipal Court under Ordinance No. 17-088. After receiving notice of Kinzel's complaint against him, Ebner counterclaimed against Kinzel, Kinzel's husband, and the city, challenging the validity and constitutionality of the city

3.

ordinances and alleging (1) declaratory judgment—Ordinance No. 12-107 (Count I); (2) declaratory judgment—Ordinance No. 17-088 (Count II); (3) declaratory judgment—taking (Count III); (4) mandamus (Count IV); (5) tortious interference (Count V); (6) conspiracy (Count VI); (7) punitive damages (Count VII); (8) attorney's fees and costs—Ordinance No. 17-088 (Count VIII); (9) equal protection—Class of One—42 U.S.C. 1983 (Count IX); (10) due process—42 U.S.C. 1983 (Count X); (11) freedom of speech—42 U.S.C. 1983 (Count XI); and (12) taxpayer action—R.C. 733.59 (Count XII). Ebner maintains that if Ordinance No. 12-107 is invalid and unconstitutional, then his use of the properties from 2013 to 2017 for short-term rentals will constitute a legal non-conforming use not subject to Ordinance No. 17-088.

## A. The Ordinances

{¶ 7} The properties at issue are located in an area zoned R1-75. Ebner owns or has owned other properties on the Chaussee that he offers for short-term rentals. The city has taken the position that short-term rentals are not allowed in areas zoned R1-75, where only "one family dwellings" are permitted. Sandusky Codified Ordinances 1129.03. "Dwelling," as it was defined in the Sandusky Codified Ordinances before December 12, 2012, is "a building designed or occupied exclusively for *non-transient* residential use, including one family, two family, or multi-family buildings." (Emphasis added.) Sandusky Codified Ordinances 1107.01(G)(2).

{¶ 8} In 2011, the city issued Ebner cease and desist orders seeking to prohibit him from offering his other properties for short-term rentals. Ebner challenged the city's

4.

position before the zoning board, which ruled for the city. Ebner appealed to the Erie County Court of Common Pleas, which ruled in his favor. The city appealed to this court. In *Ebner v. Sandusky*, 6th Dist. Erie No. E-12-057, 2013-Ohio-2475, ¶ 10, we concluded that "non-transient," as used in Sandusky Codified Ordinances 1107.01(G)(2), is unconstitutionally vague, and, therefore, void. We also found that use of the disjunctive "or" in the definition of "dwelling" signified the presence of alternatives— i.e., that a building is a "dwelling" if it is *designed* for non-transient residential use "or" if it is *occupied* for non-transient residential use. *Id.* at ¶ 11. Because the properties at issue were designed for single-family use, we concluded that Ebner was not in violation of the zoning ordinances.

{¶ 9} While *Ebner* was pending, the city sought to correct the infirmities that rendered the ordinance vague. It ultimately enacted Ordinance No. 12-107, passed on November 12, 2012, which amended Sandusky Codified Ordinances 1107.01(g)(2) by deleting "designed or" from the definition of "dwelling," and by adding the following definitions:

> (11) "Non-transient" means a period of not less than 365 days.
>
> (12) "Transient occupancy" means occupancy when it is the intention of the parties that the occupancy will be temporary. There is a rebuttable presumption that, when the dwelling unit occupied is not the sole residence of the guest, the occupancy is transient.

{¶ 10} Internally, however, the city recognized that Ordinance No. 12-107, too, was likely flawed, and set out to correct it. The result was Ordinance No. 17-088, passed on May 8, 2017. This amendment deleted the term "non-transient" and re-defined "transient occupancy" to mean "to use, occupy, or possess, or the use, occupancy, or possession of a dwelling or other living accommodations for a period of 30 consecutive calendar days or less." Sandusky Codified Ordinances 1107.01(h)(11) and 1341.32(b)(1). It also defined "transient rental" to mean "the renting, letting, subletting, leasing or subleasing of a dwelling for a period of 30 consecutive calendar days or less." Sandusky Codified Ordinances 1341.32(b)(2).

{¶ 11} Ordinance No. 17-088 established a "transient occupancy overlay district." Sandusky Codified Ordinances 1129.06(g). It expanded the permitted uses in certain zoning districts—including the roadside business district, downtown business district, commercial recreation district, and commercial amusement district—to allow "transient occupancy." Sandusky Codified Ordinances 1133.05(a)(4), 1133.08(a)(4), 1137.03(a)(2)(I), and 1137.04(a)(4). It added a procedure for annually proving legal nonconforming transient occupancy use. Sandusky Codified Ordinances 1151.08. And it created an entirely new regulatory scheme applicable to transient rental property, requiring property owners to obtain permits and undergo inspections. Sandusky Codified Ordinances 1341.32.

6.

{¶ 12} It was under this new scheme created by Ordinance No. 17-088 that the city cited Ebner criminally in Sandusky Municipal Court. Kinzel's complaint alleged ordinance violations under both Ordinance Nos. 12-107 and 17-088.

## B. The June 18, 2018 Judgment

{¶ 13} Kinzel moved for partial dismissal of Counts V (tortious interference), VI (conspiracy), and VII (punitive damages) of Ebner's counterclaim. The city moved for partial judgment on the pleadings with respect to Counts III (declaratory judgment—taking), V, VI, VII, and XII (taxpayer action—R.C. 733.59) of Ebner's counterclaim.

{¶ 14} On June 18, 2018, the trial court granted Kinzel's motion and dismissed without prejudice Ebner's claims for tortious interference, civil conspiracy, and punitive damages. The court granted the city's motion, in part, dismissing without prejudice those same claims. As to Counts III and XII—and with respect to all other claims requiring it to determine the constitutionality of the ordinances (i.e., Counts I, II, IX, X, and XI)—the trial court expressed skepticism about its jurisdiction to rule on those claims. It explained that it had been informed by the parties that the validity and constitutionality of the ordinances were being challenged by Ebner in the criminal cases pending in Sandusky Municipal Court. The trial court questioned whether it was permissible for it to rule on these claims while the same argument was pending before the municipal court in the criminal action. It ordered the parties to brief the issue.

7.

### C. The April 22, 2019 Judgment

{¶ 15} Ebner moved for summary judgment on all of Kinzel's claims. He also moved for summary judgment on Count I (declaratory judgment—Ordinance No. 12-107), Count II (declaratory judgment—Ordinance No. 17-088), Count VIII (attorney's fees and costs—Ordinance No. 17-088), and Count XII (taxpayer action—R.C. 733.59) of his counterclaims. The city moved for summary judgment on all of Ebner's counterclaims. And Kinzel moved for summary judgment on Counts I (breach of restrictive covenants), II (ordinance violation claim), and VI (claim for injunctive relief) of her complaint.

{¶ 16} On April 22, 2019, the court granted summary judgment to Ebner on Kinzel's claim for breach of restrictive covenants; granted partial summary judgment to Kinzel on her ordinance violation claim as to liability, leaving for the jury the issue of causation and damages; and granted summary judgment to Kinzel on her claim for injunctive relief based on violations of Ordinance No. 17-088, but granted summary judgment to Ebner on Kinzel's claim for injunctive relief based on breach of the restrictive covenants. It granted summary judgment to the city on all of Ebner's remaining counterclaims (Counts I, II, III, IV, VIII, IX, X, XI, XII).

{¶ 17} The court found that genuine issues of material fact existed with respect to Kinzel's claims for nuisance (Count III, IV and V); punitive damages (Count VII); and attorney fees (as requested in Counts II, III, IV, V, and VII).

8.

### 1. Kinzel's Claim for Breach of Restrictive Covenants and Related Request for Injunctive Relief

{¶ 18} Ebner purchased Lots 12 and 13 subject to deed restrictions. Those restrictions provide that "[t]here shall not be erected or suffered to remain on said premises any building or structure whatever other than a single, private, dwelling house, designed and intended for the occupancy of one family only, with garage and/or other outbuildings appurtenant thereto, necessary for the full enjoyment of one single, private, residential unit * * *." The deed also prohibits "commercial use" of the sand beach and permits use of the Chaussee "for the purposes of ingress and egress and for such other uses as are incident to and consistent with the full enjoyment of the premises for one single, private, residence unit * * *."

{¶ 19} Kinzel argued that Ebner violated these restrictions by using his properties for short-term vacation rentals, and she sought to enjoin Ebner from continuing to enter into short-term rentals of the properties. The trial court concluded that there was "no clear and unambiguous provision prohibiting the rental of the property," and "short-term vacation rentals do not violate restrictive covenants limiting the use of property to single family residential purposes." It granted summary judgment in favor of Ebner on Count I of Kinzel's complaint and denied Kinzel's request for injunctive relief relating to her claim for breach of the restrictive covenants.

9.

## 2. Kinzel's Claim for Ordinance Violations and Related Request for Injunctive Relief

{¶ 20} In Count II of her complaint, Kinzel alleged that Ebner violated Ordinance Nos. 12-107 and 17-088 by using Lots 12 and 13 for short-term rentals. She sought compensatory and punitive damages, attorney's fees, and injunctive relief. Ebner argued as an affirmative defense that these ordinances were not validly enacted and are unconstitutional.

### a. Enactment

{¶ 21} With respect to Ordinance No. 12-107, Ebner argued that the ordinance was not validly enacted because the city failed to provide the required notice and public hearing, thereby violating R.C. 713.12 and Sandusky Codified Ordinances 1113.03 and 1103.04. Kinzel and the city argued that Ordinance No. 12-107 was validly enacted as an emergency measure.

{¶ 22} The trial court pointed out that as a charter city under the Ohio Constitution, the city's charter takes precedence over state statutes and municipal ordinances. It recognized that section 14 of the Sandusky Charter provides:

> All ordinances and resolutions passed by the City Commission shall be in effect from and after 30 days from the date of their passage, except that the City Commission may, by an affirmative vote of 5 of its members, pass emergency measures to take effect at the time indicated therein.

10.

Any emergency measure is an ordinance or resolution for the immediate preservation of the public peace, property, health, or safety, or providing for the usual daily operation of a municipal department, in which the emergency is set forth and defined in a preamble thereto. Ordinances appropriating money may be passed as emergency measures, but no measure making a grant, renewal or extension of a franchise or other special privilege, or regulating the rate to be charged for its service by any public utility, shall ever be so passed.

{¶ 23} Citing our decision in *Snyder v. City of Bowling Green,* 6th Dist. Wood No. WD-96-036, 1996 WL 715426 (Dec. 13, 1996), the trial court observed that "where an ordinance, passed by a council is declared to b[e] an emergency in accordance with the municipality's laws and sets forth the reasons for the immediate necessity for the ordinance, the legislative determination of the existence of an emergency is not reviewable by the Court." The court explained that an emergency ordinance that does not set forth the reasons for its enactment would go into effect in the same manner as a non-emergency ordinance; that is, it would go into effect 30 days after the date of adoption.

{¶ 24} The court observed that Ordinance No. 12-107 did not set forth a reason for the necessity of an emergency amendment to the zoning code. But rather than rendering the ordinance invalid, the trial court held that this omission merely postponed the ordinance's effective date by 30 days, rendering it effective 30 days after its passage on

November 12, 2012. The court concluded that Ordinance No. 12-107 was properly enacted and remained in effect until it was amended by Ordinance No. 17-088.

{¶ 25} As to Ordinance No. 17-088, the court explained the procedure for amending the zoning code. It explained that an amendment may be initiated by a property owner, the Planning Commission, or the City Commission and is governed by Sandusky Codified Ordinances Chapter 1113. Under Sandusky Codified Ordinances 1113.02, the Planning Commission may, at its discretion, hold a public hearing, and if it does, public notice of the hearing is required. Under Sandusky Codified Ordinances 1113.03, the Planning Commission is required to make a recommendation and report to the City Commission on the proposed change, and the City Commission is required to set a date for a public hearing, providing 30 days' notice of the time and place of the hearing. The City Commission can approve or disapprove the Planning Commission recommendation.

{¶ 26} The court found the following facts leading up to the passage of Ordinance No. 17-088:

- May 17, 2016: the city held a public information meeting to gather input about proposed changes to its regulation of short-term or transient rentals. Ebner attended.

- February 15, 2017: the city held another public information meeting to provide an update on legislation that would be presented to the Planning

12.

Commission that would continue to make transient rentals in residential areas illegal. Ebner attended.

- February 17, 2017: the Planning Commission sent notice that it would conduct a public meeting on March 8, 2017, to consider an amendment to the Zoning Code regarding transient rentals.

- February 28, 2017: the city submitted an application to the Planning Commission to amend the City Code.

- March 8, 2017: the Planning Commission held a public meeting and approved the proposed changes, which did not change the basic rule that transient rentals in residential areas would continue to be illegal. Ebner attended and participated in the meeting.

- March 13, 2017: the City Commission voted to set a public hearing on the changes for April 24, 2017.

- March 20, 2017: notice of the hearing was published in a local newspaper. It stated that further details and information about the proposed changes could be obtained from the Assistant Planner.

- April 12, 2017: the final text of the proposed ordinance and the Planning Commission's recommendation were prepared.

- April 19, 2017: the proposed ordinance and recommendation were transmitted to the City Commission.

13.

- April 24, 2017: the City Commission held a public hearing on the proposed change. Ebner attended.

- May 8, 2017: the City Commission unanimously passed Ordinance. No. 17-088 and it became effective 30 days later.

{¶ 27} Ebner argued that Ordinance No. 17-088 was not properly enacted because the text of the proposed ordinance and Planning Commission report and recommendation was not on file for public review and comment for 30 days as required by Sandusky Codified Ordinances 1113.04. Kinzel maintained that there was substantial compliance with procedural rules and the purpose of the notice requirement was satisfied because Ebner attended the public meetings and had an opportunity to be heard. The city urged that the procedural requirements were met because tape recordings and notes of the Clerk of the Planning Commission were available for review by the public.

{¶ 28} The trial court held that there was a presumption of validity of the ordinances that Ebner failed to overcome. It concluded that the city substantially complied with Sandusky Codified Ordinances 1113.04 because (1) Ebner was present at the May 2016 meeting regarding the proposed continuation of the city's ban on short-term rentals; (2) he attended the February 15, 2017 public information meeting and the March 8, 2017 Planning Commission meeting; (3) he had access to the tape recordings and notes of the meetings; (4) he attended the April 24, 2017 meeting where the changes encompassed by Ordinance No. 17-088 were discussed; and (5) the purposes of Sandusky Codified Ordinances 1113.04 were satisfied and Ebner was not prejudiced by any

14.

deviation from those procedures. The court held that Ordinance No. 17-088 was properly enacted, thereby amending Ordinance No. 12-107.

### b. Constitutionality

{¶ 29} In addition to challenging the validity of the ordinances, Ebner also challenged their constitutionality. He argued that they were void for vagueness and unconstitutional as applied.

### (1) Void for Vagueness

{¶ 30} Ebner argued that Ordinance No. 12-107 failed to clarify the terms of the provision that we found unconstitutional in *Ebner*, 6th Dist. Erie No. E-12-057, 2013-Ohio-2475. He complained that "temporary" as used in the definition of "transient occupancy" is undefined, and he pointed out that the City Planning Director testified that 365 days—the time frame used in the definition of "non-transient"—needed to be refined to distinguish between yearly rental and transient use. The trial court applied the three-part test set forth in *Grayned v. City of Rockford*, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), for determining whether a law is void for vagueness: (1) whether the ordinance provides fair warning to the ordinary citizen of what conduct is proscribed; (2) whether the ordinance precludes arbitrary, capricious, and discriminatory enforcement; and (3) whether the ordinance impinges on constitutionally-protected rights.

{¶ 31} The court concluded that Ordinance No. 12-107 was not void for vagueness. It found that the ordinance eliminated the "designed *or* occupied" provision that we found problematic in *Ebner*, and established a clearly-defined time reference for

15.

"non-transient"—365 days—such that the term is not open to interpretation.  The court concluded that the third element of the test did not come into play because Ebner did not assert that the ordinance impinged upon a constitutionally-protected right.  In sum, it found that Ordinance No. 12-107 was not void for vagueness.

{¶ 32} With respect to Ordinance No. 17-088, Ebner argued that the ordinance does not prohibit short-term or transient rental and is vague.  The trial court found that short-term transient rental is permitted in several zoning districts—such as the roadside business district, downtown business district, commercial recreation district, and commercial amusement district—but is clearly prohibited in areas zoned R1-75 because it is not listed as a permitted use.  Rather, the court pointed out, Sandusky Codified Ordinances 1129.03 limits R1-75 to "one-family dwellings," and "dwelling" is defined as "a building occupied exclusively for non-transient residential use."  Sandusky Codified Ordinances 1107.01(h)(2).  The court determined that when read in pari materia with the new definition of "transient occupancy" (30 days or less under Sandusky Codified Ordinances 1107.01(h)(12)), these provisions make clear that Ebner is prohibited from offering his properties for rentals less than 30 days.

{¶ 33} Ebner argued that "transient occupancy" is defined as "to use, occupy or possess, or the use, occupancy or possession of a dwelling * * *," and there are multiple ways one can "use, occupy or possess" a dwelling.  But the trial court, citing *Viviano v. City of Sandusky*, 6th Dist. Erie No. E-12-058, 2013-Ohio-2813, ¶ 14, explained that "the fact that the fertile legal imagination can conjure up hypothetical cases in which the

16.

meaning of disputed terms could be questioned does not render the provision unconstitutionally vague." It concluded that Ebner failed to establish beyond a reasonable doubt that Ordinance No. 17-088 is unconstitutionally vague.

### (2) As Applied

{¶ 34} Ebner argued that Ordinance Nos. 12-107 and 17-088 are unconstitutional as applied because they bear no relation to the public health, safety, morals, or general welfare of the community. He emphasized that the properties neighbor Cedar Point Amusement Park—an establishment that produces a high amount of traffic, noise, and transient residents and guests. Kinzel responded that the amusement park has existed there for 150 years and the properties have been classified as residential since at least 1965. She argued that the fact that the adjacent property is commercial does not destroy the residential character of the properties on the Chaussee, and she contended that there was substantial evidence in the record to support the City Commission's decision to ban short-term rentals in residential areas. The city, for its part, pointed out that while Cedar Point generates noise and traffic, allowing transient rentals on the Chaussee would lead to additional issues, such as late night noise and partying, trespassing, traffic congestion, trash and litter, and safety concerns for older residents.

{¶ 35} The court explained that in an "as applied" challenge to a zoning ordinance, the landowner questions the validity of the ordinance only as it applies to a particular parcel of property. In such a situation, the ordinance will be presumed to be constitutional unless it is determined "beyond fair debate" to be "clearly arbitrary and

17.

unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community." *Jaylin Invs., Inc. v. Village of Moreland Hills*, 107 Ohio St.3d 339, 2004-Ohio-4, 839 N.E.2d 903, ¶ 13. The court noted that it cannot merely replace its judgment for that of the City Commission, and it recognized that the existence of "some adjacent properties devoted to other uses does not destroy the character of the restricted property for residential purposes or render the restrictions arbitrary." *Leslie v. Toledo*, 66 Ohio St.2d 488, 490, 423 N.E.2d 123 (1981).

{¶ 36} With these principles in mind, the trial court held that Ebner failed to establish beyond fair debate that the actions of the City Commission in passing the ordinances were clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals or general welfare of the community. It found that there was ample evidence in the record to support the Committee's action in passing the ordinances. And it specifically acknowledged that there are no other commercial establishments in the vicinity other than Cedar Point, the property has been zoned residential since 1965, and Cedar Point has existed there since 1870.

### 3. Kinzel's Claims for Nuisance and Punitive Damages

{¶ 37} Ebner argued that Kinzel's nuisance claims should be dismissed because (1) she failed to establish a real, material, and substantial injury; (2) her claims rely on the premise that Ebner's rentals were unlawful under the deed restrictions and the ordinances; and (3) Ebner has not unreasonably interfered with Kinzel's use or enjoyment of her property.

18.

{¶ 38} Kinzel responded that she provided expert testimony establishing the diminution of her property value, Ebner's use of the properties for short-term rentals prompted her to incur the expense of building a privacy fence and installing security cameras, and her quality of life and use and enjoyment of her property has been impaired.

{¶ 39} The trial court found that given its conclusions regarding the validity and constitutionality of the ordinances, the evidence presented by Kinzel sufficed to create a question of fact precluding summary judgment. And because Ebner was aware of the city's position on short-term rentals when he purchased the properties, yet continued to rent his properties even after receiving notices of violations, there existed a genuine issue of material fact on Kinzel's claim for punitive damages.

### 4. Ebner's Remaining Counterclaims Against the City

{¶ 40} For his claims against the city, Ebner sought a declaratory judgment that Ordinance Nos. 12-107 and 17-088 were not validly enacted and were not constitutional (Counts I and II); that the city's enforcement of the ordinances constituted a taking of his property without just compensation (Count III); that because of the taking, the value of his property has been diminished and the city is under a clear legal duty to commence appropriation proceedings to determine the amount of compensation for the taking (Count IV); that he is entitled to attorney's fees as a prevailing party under the ordinance as to both the city and Kinzel (Count VIII); that while the city has taken action to enforce the ordinances against him, it has not enforced them against similarly-situated individuals in violation of his right to equal protection under the law (Count IX); that despite

19.

knowing that the ordinances were invalid, the city enforced them against him in order to discourage Ebner's exercise of his constitutionally-protected property rights, violating due process (Count X); that Ordinance No. 17-088 prohibits advertising short-term rentals, depriving Ebner of his right to free speech (Count XI); and that the city's enactment and enforcement of the ordinances constitutes an abuse of power, and as a taxpayer, he seeks to have them declared null and void (Count XII).

{¶ 41} The trial court concluded that under the jurisdictional priority rule, it lacked jurisdiction to consider Counts II, III, IV, IX, X, XI, XII. This is because the city filed criminal complaints against Ebner in Sandusky Municipal Court on August 30, 2017, and October 31, 2017—before Ebner filed his counterclaim—alleging violations of Ordinance No. 17-088. The trial court stated that the constitutionality of Ordinance No. 17-088 is at issue in the criminal cases. The court found that it and the Sandusky Municipal Court have concurrent jurisdiction to consider the constitutionality of Ordinance No. 17-088, but because the jurisdiction of the Sandusky Municipal Court was first invoked, it would interfere with those proceedings were the trial court to consider them in the present case. It held that the city was entitled to dismissal of these counts under the jurisdictional priority rule.

{¶ 42} Alternatively, assuming that the jurisdictional priority rule did not apply, the court concluded that the city is still entitled to dismissal of Counts I, II, III, IV, X, XI, and XII of Ebner's counterclaims because the statutes are valid and constitutional for the reasons discussed in the court's analysis of Kinzel's claims. Because Ebner did not

20.

prevail on his counterclaims, the court held that the city was entitled to summary judgment on Count VIII. But the court held that a question of fact remained as to Ebner's equal protection claim (Count IX).

{¶ 43} Ebner appealed. He assigns the following errors for our review:

I. The trial court erred when it dismissed all of the Defendants-Appellants/Cross-Appellees' (the "Ebners") claims against Appellee the City of Sandusky (the "City"), based upon the jurisdictional priority rule, since the criminal action pending in the City's Municipal Court did not involve the same parties or causes of action, and the Court of Common Pleas and the Municipal Court are not courts of concurrent jurisdiction.

II. The trial court erred when it dismissed the Ebners' counterclaims against the City and denied the Ebners' motion for summary judgment based upon the alternate ground that the City Ords. 12-107 and 17-088 were validly enacted and otherwise constitutional.

III. The trial court erred in granting Plaintiff-Appellee/Cross-Appellant Kinzel Family Trust (the "Kinzels") a permanent injunction against the Ebners from using and advertising property at 2253 and 2243 Cedar Point Road in violation of Ord. 17-088 based on its finding that Ord. 17-088 was properly enacted and otherwise constitutional and that the Ebners had violated same, and in denying the Ebners' motion for summary judgment.

21.

{¶ 44} Kinzel cross-appealed. She assigns the following errors for our review:

I. The Trial Court Erred to the Material Prejudice of Appellee/Cross-Appellant Judith A. Kinzel, Trustee, By Granting Summary Judgment in the Ebner Parties' Favor and Dismissing With Prejudice Count I (Breach Of Restrictive Covenants) of the Verified Complaint for Injunctive Relief and Damages, and Denying Ms. Kinzel's Motion for Summary Judgment With Respect to the Same Claim.

II. The Trial Court Erred to the Material Prejudice of Appellee/Cross-Appellant Judith A. Kinzel, Trustee, By Denying Her Request for a Permanent Injunction on Grounds That the Ebner Parties' Use of the Properties Is a Breach of Restrictive Covenants.

## II. Standard of Review

{¶ 45} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the

party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 46} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III.  Law and Analysis

{¶ 47} The trial court dismissed all of Ebner's counterclaims, Kinzel's claim against Ebner for breach of restrictive covenants, and Kinzel's claim for injunctive relief based on breach of the restrictive covenants. It entered judgment in favor of Kinzel on

23.

her claim for injunctive relief based on violations of Ordinance No. 17-088 (Count VI). And it left for resolution by a jury the issue of causation and damages with respect to Kinzel's ordinance violation claim (Count II), her claims for nuisance (Count III, IV, and V), and her claims for punitive damages (Count VII) and attorney fees (requested in Counts II, III, IV, V, and VII).

{¶ 48} Ebner argues in his first assignment of error that the trial court erred in concluding that the jurisdictional priority rule prevented it from considering his claims against the city. In his second assignment of error, he argues that the trial court erred in its alternate finding that Ordinance Nos. 12-107 and 17-088 were validly enacted and otherwise constitutional. And in his third assignment of error, Ebner argues that the trial court erred in granting injunctive relief to Kinzel based on its finding that Ordinance No. 17-088 was properly enacted and otherwise constitutional and that Ebner had violated that ordinance by offering his properties for short-term rentals.

{¶ 49} In her cross-appeal, Kinzel challenges the court's dismissal of her breach-of-restrictive-covenants claim and her accompanying claim for injunctive relief based on the alleged breach of the covenants.

{¶ 50} We begin by addressing Kinzel's cross-appeal. We then move to Ebner's assignments of error.

24.

## A. Kinzel's Claim for Damages and Injunctive Relief for Breach of Restrictive Covenants

{¶ 51} In her first assignment of error, Kinzel argues that the trial court erred in granting summary judgment to Ebner and dismissing her claim for breach of restrictive covenants. In her second assignment of error, Kinzel argues that the trial court erred in denying her claim for permanent injunction, which was premised on her claim for breach of restrictive covenants.

{¶ 52} Ebner purchased Lots 12 and 13 subject to certain deed restrictions. Kinzel maintains that those deed restrictions permit the properties to be used "solely as single-family residences" and that Ebner's use of the properties as "systematic, short-term vacation rentals" violates the properties' deed restrictions. She insists that Ebner breached the following restrictive covenants contained in the deeds:

> II. There shall not be erected or suffered to remain on said premises any building or structure whatever other than a single, private, dwelling house, designed and intended for the occupancy of one family only, with garage and/or other outbuildings appurtenant thereto, necessary for the full enjoyment of one single, private, residential unit, and such single, private, dwelling house, garage and/or other outbuildings shall be constructed, erected, located and/or maintained only pursuant to, and in accordance with, all and singular the covenants and agreements of the Grantees herein contained and not otherwise.

25.

VIII. Commercial use of the "Sand Beach" is prohibited.

IX. The Chaussee shall be used for the purposes of ingress and egress and for such other uses as are incident to and consistent with the full enjoyment of the premises for one single, private, residence unit. * * * Neither the Grantor, the Grantee, nor any one claiming under them or either of them, shall in any manner obstruct any portion of said Chaussee or use the same for the parking or storage of vehicles or materials or otherwise, or in any manner prevent the free and unobstructed use of the traveled portion thereof by all parties entitled to use the same.

{¶ 53} The trial court concluded that Ebner's use of the properties for short-term vacation rentals did not violate the deed restrictions. It held that the provisions were subject to varying interpretations, but it emphasized that there was no clear and unambiguous restriction prohibiting rental of the property. It declined to construe the provisions as containing an implied term precluding rental of the properties because that interpretation would be contrary to the rule of construction favoring the free use of land. In so holding, it relied on our decision in *Catawba Orchard Beach Assn., Inc. v. Basinger*, 115 Ohio App.3d 402, 685 N.E.2d 584 (6th Dist.1996), where we found that a property owner who rented out his property did not violate deed restrictions that specified that the property was for "private residences only" and that only "a single residence, designed for the use of one family" could be built or maintained.

26.

{¶ 54} Because the trial court concluded that the short term rental of the properties did not violate the deed restrictions, it further held that short-term renters of the properties could use the sand beach and could use the Chaussee to access the properties.

{¶ 55} Kinzel argues that the trial court's conclusion is wrong. She maintains that there are two questions that must be answered: (1) whether the deed restrictions restrict use of the property to single-family residences, and (2) whether use of the properties for systematic, short-term rentals complies with the deed restrictions. She contends that the trial court incorrectly focused on whether the deed restrictions clearly and unambiguously prohibit rentals. Kinzel argues that the terms used in the deed restrictions demonstrate the parties' intent that the properties be used as single-family residences only and Ebner's systematic, short-term rentals of the properties violates those restrictions and constitutes a commercial use of the properties.

{¶ 56} Ebner insists that the deeds restrict the *design* of any structures to be erected on the properties—not the *use* of the properties—and does not bar rental activities. He maintains that the terms of the deed restrictions themselves do not restrict the length of occupancy and do not prohibit short-term rentals, and he contends that use of the lots as rental properties is not a commercial use. He also challenges Kinzel's standing to assert the deed restrictions.

### 1. Standing

{¶ 57} Ebner argues that Kinzel lacks standing to enforce the deed restrictions. He maintains that a property owner may enforce deed restrictions against another property

owner only where the covenants are for their mutual benefit. He insists that because Kinzel acquired her property without the restrictions applicable to Ebner's properties, and because the deeds contain no language indicating that Kinzel is an intended beneficiary or has an equitable interest in enforcing the restrictions, she has no standing to do so.

{¶ 58} Kinzel responds—and the trial court concluded—that Kinzel has standing to enforce the restrictions because (1) Kinzel and Ebner's properties are all located within the Laguna subdivision and both derived their deeds from a common grantor—Cedar Point; (2) the language of the Ebner deeds expresses that the restrictions are for the benefit of persons like Kinzel; and (3) Kinzel has an equitable interest in enforcing the deed restrictions.

{¶ 59} "The owner of one property may enforce restrictive covenants against another property owner only where the covenants are for their mutual benefit." *Nutis v. Schottenstein Trustees*, 41 Ohio App.3d 63, 65-66, 534 N.E.2d 380 (10th Dist.1987). Courts have held that a restrictive covenant is for the mutual benefit of other property owners "when there is a uniform general plan of improvement for the development." *Id*. In the absence of a uniform general plan for improvement for the development, the person seeking to enforce a restrictive covenant must show that the restrictions were intended for his or her benefit and he or she has an equitable interest in enforcing the restriction. *Berger v. Van Sweringen Co.*, 6 Ohio St.2d 100, 102, 216 N.E.2d 54 (1966). The intent of the parties may be ascertained from the language used in the restriction and by the surrounding circumstances. *Id*. The determination of a party's standing is a

28.

question of law. *Holiday Haven Members Assn. v. Paulson*, 4th Dist. Hocking No. 13CA13, 2014-Ohio-3902, ¶ 13.

{¶ 60} Ebner argues that Cedar Point abandoned any uniform plan to develop Laguna Subdivision when it deeded lots to Kinzel without incorporating the same restrictions contained in the deeds to Lots 14 and 15. He further maintains that Kinzel cannot show that she was an intended beneficiary of the deeds—or that she has an equitable interest in enforcing them—because under the language of the deed itself (emphasized in bold below), a person has standing to enforce the restrictions only if his or her property is burdened with the same restrictions sought to be enforced:

> As a part of the consideration of this conveyance and in accepting this conveyance, and **in consideration of the incorporation of like covenants**, save as to the value of the residence to be erected on each parcel, **in conveyance of other parcels**, except in conveyance of parcels located within the Resort Grounds as herein defined, the Grantees hereby covenant and agree to and with the Grantor for the *use and benefit* of the Grantor and of *every other person who shall or may become the owner of, or have title derived immediately or remotely from, through or under the Grantor*, to any parcel of land, this conveyance is made subject to the following conditions, covenants, rights, terms, reservations, limitations, agreements, restrictions and easements * * *[.] (Emphasis added.)

29.

**{¶ 61}** Kinzel relies on the italicized portion of this same provision as demonstrating her standing—as a person whose "title derived immediately or remotely from" the Grantor, Cedar Point—to enforce the deed restrictions.

**{¶ 62}** The provision cited above explicitly states that the covenants are for the "use and benefit" of "every other person" whose title is derived immediately or remotely from Cedar Point. We acknowledge that the provision contemplates that the deeds to other properties located within the subdivision would incorporate "like covenants." Nevertheless, it does not restrict the "use and benefit" to only persons whose deeds contain identical covenants. Because Kinzel—like Ebner—derived title to Laguna Lots 14 and 15 immediately or remotely from Cedar Point, we conclude that she was intended to benefit from the deed restrictions and, therefore, has standing to enforce them.

### 2. The Deed Restrictions

**{¶ 63}** We now turn to Kinzel's claim that Ebner's use of the properties for short-term vacation rentals violates the restrictive covenants contained in the deeds. Under the rules of construction applicable to restrictive covenants, "[w]here the language contained in a deed restriction is indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land." *Houk v. Ross*, 34 Ohio St.2d 77, 296 N.E.2d 266 (1973), paragraph two of the syllabus. Where, the language in a restriction is clear, however, a court must enforce the restriction. *Farrell v. Deuble*, 175 Ohio App.3d 646, 2008-Ohio-1124, 888 N.E.2d 514, ¶ 11 (9th Dist.). In interpreting a restrictive covenant, "common, undefined words appearing in the

30.

written instrument 'will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *Id.,* quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

{¶ 64} Kinzel maintains that the deed's use of the terms "residential," "enjoyment," and "occupancy" and its limits on the types of structures that may be "erected" reflect the parties' intent "to restrict the use or mode of occupancy to which the building may be put." She insists that the terms "private residence" and "single dwelling house" have even narrower meanings, "indicating an intent for the property to be used by one family only." Kinzel argues that the short-term rental of properties is a "non-residential use" prohibited under the deed restrictions because short-term renters do not reside at the properties. She characterizes the use of the properties as "commercial" because they are used in connection with Ebner's vacation rental business. She maintains that renting a house for use as a single family's primary residence does not violate a residential use restriction, but systematically renting a house to short-term occupants does.

{¶ 65} Ebner argues that the plain language of the deed restriction limits only the design and construction to a single-family house and does not restrict who may occupy the house and for how long. He points out that the deed restriction does not contain the terms "purpose" or "residence"—it uses the term "residential unit," making clear that it limits only the type of *structure* that may be erected on the property. He also points out

31.

that the terms "rent," "rental," "use," or "occupy," do not appear in this provision of the deed, nor does it provide that the premises may be used only as a permanent or semi-permanent residence—terms defined in the deed. Ebner contends that a race restriction contained within the deed demonstrates that the drafters did not intend to prohibit rentals and contemplated that one may "use," "occupy," or hold an "interest" in the premises— e.g., rent it—without holding title to it. He urges that Kinzel's interpretation of the deed restrictions requires the court to rewrite the deed.

{¶ 66} Kinzel claims that *Linwood Park Co. v. Van Dusen*, 63 Ohio St. 183, 58 N.E. 576 (1900), and *Catawba Orchard Beach*, 115 Ohio App.3d 402, 685 N.E.2d 584, "establish the rule that renting a house for use as a single family's primary residence does not violate a residential use restriction, but systematically renting a house to short-term occupants is a prohibited non-residential use."

{¶ 67} In *Linwood Park*, the defendant entered into a lease that contained a covenant obligating him to use the premises "for the purpose of a private dwelling or residence only * * *." *Id.* at 197. Instead, the defendant built a tenement house on the property with 17 rooms. The defendant argued that each tenant used his or her apartment for the purposes of a private dwelling. The court observed, however, that "the plain provision of the covenant is that the leased premises shall be used for the purposes of *a* dwelling or residence only, not for a number of dwellings." (Emphasis added.) *Id.* at 200. It held that the defendant's use of the property violated the lease.

{¶ 68} In *Catawba Orchard Beach*, the defendants purchased lots in Catawba Orchard Beach with the express purpose of leasing the property to renters. The deeds to the properties contained the following restriction: "The lots in said The Catawba Orchard Beach shall be used for private residences only. No building or other structures shall be erected or maintained on any lot other that [*sic*] a single residence, designed for the use of one family, and a private garage for the use of the owner of said lot." *Id.* at 406. It further provided that "[s]aid premises shall never be used for commercial purposes of any kind." *Id.* The plaintiffs argued that by offering their properties for lease, the defendants were not using the properties as a single private residence and were instead using the properties for commercial purposes.

{¶ 69} We observed that the terms "residence" or "residential" in restrictive covenants are "used in contradiction to the word 'business.'" *Id.* at 409, quoting *Hunt v. Held*, 90 Ohio St. 280, 283, 107 N.E. 765 (1914). "Use," we explained, is the "'means that one is to enjoy, hold, occupy or have some manner of benefit thereof.'" *Id.*, quoting *Black's Law Dictionary* 1382 (5th Ed.1979). We concluded that the defendant's use of their homes as rental properties did not violate the terms of the restrictive covenants. We reasoned that "[w]hile the rental of the homes did earn [the defendants] an income, no business was being conducted on the property as in *Linwood,* where the defendants were running a tenement house. Rather, the rental properties in the case at bar were used as single residences for one family each." *Id.* at 409.

33.

{¶ 70} We do not agree with Kinzel that *Linwood Park* and *Catawba Orchard Beach* stand for the proposition that systematically renting a house to short-term occupants is a prohibited non-residential use. And as we did in *Catawba Orchard Beach*, we find *Linwood Park* distinguishable. The property at issue in *Linwood Park* consisted of 17 apartments when the lease required that the premises be used for a single dwelling. Here, the houses on Lots 12 and 13 were "designed and intended for the occupancy of one family only"—according to the record, they contain "a normal complement of bedrooms, bathrooms, and only one kitchen" consistent with a single-family home. *Linwood Park* is, therefore, inapplicable.

{¶ 71} As for our decision in *Catawba Orchard Beach*, that case supports Ebner's position—not Kinzel's. For one, we found that the defendants' rental of the single-family homes was not a "commercial use" of the property. Additionally, we did not draw any distinctions between long-term and short-term rentals. Regardless of how many families or unrelated guests may occupy Ebner's properties at any given time, the dwellings themselves consist of only one residential unit.

{¶ 72} To that end, we find covenant II unambiguous. The provision speaks only to the design of the buildings or structures to be erected or maintained on the premises. It permits only single residential units. In other words, multi-family dwellings—such as duplexes, condominiums, or apartment buildings—are not permitted. *See, e.g., Upper Arlington Co. v. Lawwell*, 20 Ohio App. 362, 363, 152 N.E. 203 (2d Dist.1925) (owner violated deed restriction that permitted only "single, private dwelling house" to be

34.

"erected or maintained" on property when he remodeled home to add new entrance and second kitchenette, transforming it into duplex); *Wilson v. Tuttle & Son Construction, Inc.*, 3d Dist. Auglaize No. 2-81-14, 1982 WL 6736, *2 (Feb. 18, 1982) (examining standing and notice arguments after developer was enjoined from constructing two-story multi-family dwellings on property in violation of deed restriction allowing only "single, private dwelling house" to be erected or maintained).

{¶ 73} Additionally, covenant II does not mandate that one family "reside" in the house —it specifies that the dwelling house be designed or intended for the "occupancy" of one family. "Occupancy" is defined in *Black's Law Dictionary* as "[t]he act, state, or condition of holding, possessing, or residing in or on something." *Black's Law Dictionary* (11th Ed. 2019). "Occupy" is defined in *Black's* as "[t]o live *or stay* in (a place)." (Emphasis added.) *Id.* One may occupy (*stay in*) a place without residing in it. And the covenant does not require that one's occupancy of the properties be for any particular length of time.

{¶ 74} In *Northwest Civic Group v. Bernstein*, 91 Ohio App.3d 18, 631 N.E.2d 671 (2d Dist.1993), real estate agents purchased a lot in a subdivision with the purpose of converting it into a real estate sales office. There was a restrictive covenant providing: "All lots in this tract shall be known as described as residential lots [sic]. No structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single family dwelling, not to exceed two and one-half stories in height and a private garage for not more than two (2) cars." *Id.* at 19. The court

35.

concluded that this covenant "limit[ed] the type and location of structure on the lots," but "[s]trictly construed, they do not specifically limit the use of the lots." *Id.* at 20.

{¶ 75} Like the covenant in *Bernstein,* covenant II places limits on the structures that may be erected on the lots but does not specifically limit the use of the lots. Had the grantor intended to prevent the properties from being rented on a short-term basis, it could easily have provided for this in the deed. *See, e.g., Houk*, 34 Ohio St.2d at 91, 296 N.E.2d 266 ("If it had been the intent of the sellers to limit construction to single-family residences or dwellings, that restriction should have been specifically stated."); *Dunkirk Realty v. Collette*, 6th Dist. Wood No. WD-98-070, 1999 WL 252752, *4 (Apr. 30, 1999) ("If the developers had the intent to prohibit the use of free standing storage sheds, they could have easily included them in their list of restrictions."). We decline to write this restriction into the deed.

{¶ 76} As for use of the sand beach, consistent with our decision in *Catawba Orchard Beach,* we find that the use of this amenity incidental to the rental of the properties themselves is non-commercial. The same is true with respect to use of the Chaussee.

{¶ 77} Accordingly, we find Kinzel's first assignment of error not well-taken. And because we find that the trial court properly granted summary judgment in favor of Ebner on this claim, we find no error in the trial court's dismissal of Kinzel's claim for permanent injunction relative to the alleged breach of deed restrictions. We, therefore, also find her second assignment of error not well-taken.

36.

## B. Jurisdictional Priority Rule

{¶ 78} As its primary rationale, the trial court dismissed Counts II, III, IV, IX, X, XI, and XII of Ebner's counterclaims against the city under the jurisdictional priority rule. It explained that criminal complaints were filed against Ebner in municipal court for ordinance violations before Ebner filed his counterclaims against the city in the present case. The court reasoned that because the constitutionality of Ordinance No. 17-088 is at issue in both cases, and because the jurisdiction of the municipal court was first invoked, it lacked jurisdiction to consider these counts of Ebner's counterclaims. In reaching this conclusion, the trial court stated that it and the municipal court had concurrent jurisdiction to determine the constitutionality of the ordinance. In his first assignment of error, Ebner argues that the trial court erred in relying on the jurisdictional priority rule in dismissing his counterclaims.

{¶ 79} "The jurisdictional priority rule provides that [a]s between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." (Internal quotations and citations omitted.) *State ex rel. Red Head Brass, Inc. v. Holmes Cty. Court of Common Pleas*, 80 Ohio St.3d 149, 684 N.E.2d 1234 (1997). Generally, "if the second case does not involve the same cause of action or the same parties, the first suit will normally not prevent the second case." *Id.*

37.

**{¶ 80}** Having said this, courts will apply the jurisdictional priority rule "when the causes of action, relief requested, and the parties are not exactly the same so long as the actions are part of the same 'whole issue.'" *Triton Servs., Inc. v. Reed*, 12th Dist. Butler No. CA2016-04-028, 2016-Ohio-7838, ¶ 8. "Actions comprise part of the 'whole issue' when: (1) there are cases pending in two different courts of concurrent jurisdiction involving substantially the same parties; and (2) the 'ruling of the court subsequently acquiring jurisdiction may affect or interfere with the resolution of the issues before the court where the suit originally commenced.'" *Instant Win, Ltd. v. Summit Cty. Sheriff*, 9th Dist. Summit No. 20762, 2002-Ohio-1633, ¶ 6, quoting *Michaels Bldg. Co. v. Cardinal Fed. S. & L. Bank*, 54 Ohio App.3d 180, 183, 561 N.E.2d 1015 (8th Dist.1988).

**{¶ 81}** Courts have recognized, however, that "'the [jurisdictional-priority] rule does not apply where the conflict of jurisdiction is between a court of general jurisdiction and one whose limited powers are inadequate to afford full relief to the parties.'" (Internal citations omitted.) *Duckworth v. Burger King Corp.*, 159 Ohio App.3d 540, 2005-Ohio-294, 824 N.E.2d 592, ¶ 15 (10th Dist.). For instance, in *Duckworth*, an action was filed in municipal court and a second action was filed in common pleas court. The plaintiff then amended her complaint in municipal court and sought damages exceeding the court's jurisdictional limits. The appellate court concluded that the jurisdictional priority rule could not apply because "the limited powers of the municipal court were inadequate to afford full relief to appellants[,] * * * there could be no conflict of jurisdiction, and the common pleas court could properly exercise jurisdiction * * *." *Id.*

38.

{¶ 82} Ebner argues that the jurisdictional priority rule is inapplicable here for numerous reasons. First, the Kinzels are not parties to the misdemeanor case. Second, the Sandusky Municipal Court and the Court of Common Pleas are not courts of concurrent jurisdiction—the common pleas court is a court of general jurisdiction that can adjudicate the claims raised by Kinzel and the defenses and counterclaims raised by Ebner, whereas the municipal court is a court of limited jurisdiction that has no authority to adjudicate all of Kinzel's claims and Ebner's counterclaims. Third, the causes of action are not the same or even similar—the municipal court case is a criminal case employing a different burden of proof than a civil case, and before that court is the limited issue of whether Ebner violated Ordinance No. 17-088; the issue of the ordinance's validity and constitutionality is not before that court despite the trial court's statements to the contrary. Fourth, the trial court's application of the doctrine contradicts the purpose of the rule, does not promote judicial economy, and requires a multiplicity of suits with possible inconsistent results. Finally, a court is authorized to enjoin enforcement of a criminal law when public authorities or private citizens seek to enforce invalid legislation that interferes with and irreparably harms vested property rights.

{¶ 83} The city insists that even though the causes of action are not the same, the "whole-issue rule" applies here. It maintains that the suits present part of the same "whole issue" because the two cases involve substantially the same parties, and the criminal proceedings—like the present case—involve application of Ordinance No.

39.

17-088.  If the common pleas court were to determine the constitutionality of Ordinance No. 17-088, the city contends, it would affect or interfere with the resolution of the issues pending in municipal court.

{¶ 84} We agree with Ebner that the jurisdictional priority rule is inapplicable here.  First, there is nothing in the record—no citations to deposition transcripts, no copies of pleadings, no exhibits—demonstrating that the validity and constitutionality of the ordinances are at issue in both actions.  While it is clear from Ebner's deposition that he believes that the ordinances cannot be enforced against him because they are invalid and unconstitutional, there are no records that have been brought to our attention demonstrating that he has raised this issue in municipal court.[1]  The criminal claims, in fact, could be resolved without the municipal court ever reaching the issue or passing upon the validity or constitutionality of the ordinance.

{¶ 85} Second, the parties and causes of action are not the same.  The Kinzels are not parties to the municipal court cases, and in the municipal court cases, Ebner is

---

[1] Generally, "a trial court may not take judicial notice of earlier proceedings, either in its own court or another court, except for proceedings in the immediate case under consideration." *Dombelek v. Ohio Bur. of Workers' Comp.*, 154 Ohio App.3d 338, 2003-Ohio-5151, 797 N.E.2d 144, ¶ 26 (7th).  Even if the trial court could take judicial notice of the municipal court proceedings, (1) the municipal court docket indicates that motions to dismiss were filed in Sandusky Municipal Court case Nos. CRB1703537 and CRB1702912A/B on July 24 and 25, 2019—three months *after* the trial court issued its April 22, 2019 judgment; and (2) the online docket simply lists the docket entries—the documents themselves are not available on the Sandusky Municipal Court website, therefore, it is not possible to determine what defenses Ebner raised.

charged with *criminal* violations of Ordinance No. 17-088; only *civil* claims are pending before the common pleas court.

{¶ 86} Third, Ebner's counterclaim seeks principally equitable relief and damages in excess of $25,000. "Although there are statutory exceptions, it is well-established that a municipal court does not have subject matter jurisdiction over an action that is *principally equitable* in nature." *Hull v. Charter One Bank*, 8th Dist. Cuyahoga No. 99308, 2013-Ohio-2101, ¶ 11. It also does not have jurisdiction over claims seeking monetary damages exceeding $15,000. R.C. 1901.17. As previously explained, the jurisdictional priority rule does not apply when "'the conflict of jurisdiction is between a court of general jurisdiction and one whose limited powers are inadequate to afford full relief to the parties'" because under such circumstances, the municipal court and common pleas court are not courts of concurrent jurisdiction. (Citations omitted.) *Scott v. Dohse*, 194 Ohio App.3d 364, 2011-Ohio-2190, 956 N.E.2d 363, ¶ 6 (2d Dist.); *Adams Robinson Ent. v. Envirologix Corp.*, 111 Ohio App.3d 426, 429-30, 676 N.E.2d 560 (2d Dist.1996) ("Concurrent jurisdiction exists when several different courts or tribunals are authorized to deal with the same subject matter * * *. [I]t is syllogistic that if one of two conflicting courts does not have subject matter jurisdiction, there is no concurrent jurisdiction * * *.").

{¶ 87} Accordingly, we agree with Ebner that the trial court erred in applying the jurisdictional priority rule. We find his first assignment of error well-taken.

41.

## C. Ebner's Second and Third Assignments of Error

{¶ 88} The trial court held that even if the jurisdictional priority rule is inapplicable, Counts I, II, III, IV, X, XI, and XII of Ebner's counterclaim are nevertheless subject to dismissal because of the court's finding (respecting Kinzel's claim) that Ordinance Nos. 12-107 and 17-088 were validly enacted and constitutional. The trial court held that if its alternate basis for granting summary judgment becomes applicable, Count IX of Ebner's counterclaim—equal protection, class of one—would survive and must be tried to a jury.

{¶ 89} In his second assignment of error, Ebner argues that the trial court erred in its alternate finding that Ordinance Nos. 12-107 and 17-088 were validly enacted and otherwise constitutional. In his third assignment of error, Ebner argues that the trial court erred in granting injunctive relief to Kinzel based on its finding that Ordinance No. 17-088 was properly enacted and otherwise constitutional and that Ebner violated that ordinance by offering his properties for short-term rentals.

{¶ 90} We find that the trial court's judgment is not yet final and appealable with respect to the issues raised in these two assignments of error. This court has jurisdiction to hear appeals only from final orders. Ohio Constitution, Article IV, Section 3(B)(2). Whether an order is final and appealable is a jurisdictional question that this court can—and must—raise sua sponte. *Turner & Son Funeral Home v. Hillsboro*, 2015-Ohio-1138, 28 N.E.3d 1279, ¶ 8 (4th Dist.). The Ohio Supreme Court has itself acknowledged that determining whether an order is final and appealable can be difficult in litigation

42.

involving multiple parties and multiple claims. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266, 270 (1989).

{¶ 91} "An order which adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 and Civ.R. 54(B) in order to be final and appealable." *Noble v. Colwell*, 44 Ohio St.3d 92, 540 N.E.2d 1381 (1989), syllabus. Under R.C. 2505.02(B), an order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

* * *

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 92} Under Civ.R. 54(B), "[w]hen more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. * * *." But Civ.R. 54(B) "is merely a procedural device." *Gen. Acc. Ins. Co.* at 21. It "cannot transform a nonfinal order into an appealable order." *Internatl. Managed Care Strategies v. Franciscan Health Partnership,* 1st Dist. Hamilton No. C-010634, 2002-Ohio-4801, ¶ 8.

{¶ 93} We first explain our conclusion respecting Ebner's third assignment of error. We then turn to his second assignment of error.

### 1. Injunctive Relief in Favor of Kinzel

{¶ 94} The trial court found Ebner liable for violations of the ordinances and granted summary judgment in favor of Kinzel on Counts II and VI of her complaint. It reserved the issue of damages for a jury trial, however. "A determination of liability without a determination of damages is not a final appealable order because damages are part of a claim for relief, rather than a separate claim in and of themselves." *Miller v. First Internatl. Fid. & Tr. Bldg., Ltd.*, 165 Ohio App.3d 281, 2006-Ohio-187, 846 N.E.2d 87, ¶ 25 (6th Dist.), *aff'd,* 113 Ohio St.3d 474, 2007-Ohio-2457, 866 N.E.2d 1059, ¶ 25. *See also Mayfred Co. v. City of Bedford Hts.*, 70 Ohio App.2d 1, 3, 433 N.E.2d 620 (8th Dist.1980) ("[A] summary judgment for plaintiff

44.

holding a defendant liable on the claim and leaving the question of damages for a further proceeding is not a final order from which an appeal may be taken.").

{¶ 95} Kinzel's claim for injunctive relief was asserted as a separate claim, but it was based on the same facts giving rise to Kinzel's claim for money damages for violations of those same ordinances. In *State ex rel. v. Big Sky Energy*, 11th Dist. Ashtabula No. 2012-A-0042, 2013-Ohio-437, ¶ 14, the appellate court dismissed an appeal for lack of a final, appealable order where the trial court granted a permanent injunction to the appellee but had not yet determined damages. The court rejected the appellant's claim that the order was final and subject to appellate review "because the part of the order that granted a permanent injunction affected a substantial right and was done in a special proceeding." *Id.* It found that absent a determination of damages, the trial court's judgment was not final under R.C. 2505.02 and Civ.R. 54(B), and it lacked jurisdiction to review it. *Id.* at ¶ 15. *See also Saint-Gobain/Norton Indus. Ceramics Corp. v. Parkhurst*, 11th Dist. Geauga No. 94-G-1871, 1994 WL 738730, *2 (Dec. 30, 1994) (dismissing appeal as not final where trial court's order resolved the issue of liability and granted permanent injunction to appellee but did not determine compensatory damages).

{¶ 96} Here, while the trial court judgment granted permanent injunctive relief to Kinzel, the matter of compensatory damages has not been resolved. We, therefore, find that we lack jurisdiction to consider Ebner's third assignment of error. We reach this

45.

conclusion despite the trial court's finding under Civ.R. 54(B) that there is no just cause for delay. *See id*.

### 2. Ebner's Counterclaims Against the City

{¶ 97} Because of our resolution of Ebner's first assignment of error, we are left with the trial court's alternate basis for granting summary judgment against Ebner and in favor of the city—i.e., its conclusion that the ordinances are valid and constitutional. Under the court's alternate basis, Count IX of Ebner's counterclaim—equal protection, class of one—remains viable. Moreover, as explained above, Kinzel's claim for ordinance violations has not been fully resolved because her damages have not yet been determined. Nevertheless, Ebner in his second assignment of error asks that we review the trial court's finding that Ordinance Nos. 12-107 and 17-088 were validly enacted and otherwise constitutional.

{¶ 98} Count II of Kinzel's complaint, Ebner's defenses to that claim, and Ebner's counterclaims against the city all arise from the same facts and circumstances and involve the same legal issues. A judgment is not appealable under Civ.R. 54(B) "if pending unresolved claims 'touch upon the very same facts, legal issues and circumstances' as the resolved claims." *Rae-Ann Suburban, Inc. v. Wolfe*, 8th Dist. Cuyahoga No. 107536, 2019-Ohio-1451, ¶ 16, quoting *Altenheim v. Januszewski*, 8th Dist. Cuyahoga No. 105860, 2018-Ohio-1395, ¶ 3-7, 10-13. In that situation, "[w]here claims arise from the same alleged conduct, they are inextricably intertwined and not appealable despite

46.

Civ.R. 54(B) certification." *Internatl. Managed Care Strategies*, 1st Dist. Hamilton No. C-010634, 2002-Ohio-4801, at ¶ 9.

{¶ 99} In *Walker v. Firelands Community Hosp.*, 6th Dist. Erie No. E-06-023, 2006-Ohio-2930, ¶ 23, we held that "an order that disposes of fewer than all of the claims in an action, and contains a Civ.R. 54(B) determination that there is no just reason for delay, is appealable if the claim or claims disposed of are entirely disposed of and either of the following applies": (1) the disposed of claims are factually separate and independent from the remaining claim, or (2) the claims are not factually separate and independent, but the legal theories presented in the disposed of claims require proof of substantially different facts or provide for different relief from the remaining claims.

{¶ 100} Here, the remaining claims and the disposed of claims involve the same facts and require application of the same legal theories. Kinzel's claim for ordinance violations, Ebner's defenses to that claim, and Ebner's counterclaims against the city all require resolution of the same legal issue: the validity and constitutionality of the ordinances. The claims are inextricably intertwined. *See, e.g., Glenmoore Builders, Inc. v. Smith Family Tr.*, 9th Dist. Summit No. 23879, 2008-Ohio-1379, ¶ 16 ("This claim is so inextricably intertwined with the other claims and issues on appeal that the trial court's attempt to make Judgment Entry Eight final and appealable by simply inserting Civ.R. 54(B) language is ineffective.").

{¶ 101} We, therefore, find that we lack jurisdiction to consider Ebner's second assignment of error.

47.

## IV. Conclusion

{¶ 102} With respect to Ebner's assignments of error, we find his first assignment of error well-taken. We agree with him that the trial court erred in applying the jurisdictional priority rule as a basis for dismissing Counts II, III, IV, VIII, IX, X, XI, and XII of his counterclaim.

{¶ 103} We dismiss Ebner's second assignment of error for lack of jurisdiction. The claims he asks us to review in this assignment are inextricably intertwined with claims that remain pending in the trial court. The trial court's judgment, therefore, is not yet final and appealable as it relates to this assignment.

{¶ 104} We also dismiss Ebner's third assignment of error for lack of jurisdiction. The trial court's judgment is not yet final and appealable with respect to this assignment because Kinzel's damages for Ebner's ordinance violations have not yet been determined.

{¶ 105} With respect to Kinzel's cross-appeal, we find both of her assignments of error not well-taken. We agree with the trial court that Ebner did not violate deed restrictions by offering his properties for short-term rentals. The trial court properly denied Kinzel's claim for injunctive relief in connection with this claim.

48.

**{¶ 106}** We affirm the April 22, 2019 judgment of the Erie County Court of Common Pleas, in part, and reverse, in part, and we remand the matter for further proceedings consistent with this decision.  The parties are ordered to share the costs of this appeal under App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

Christine E. Mayle, J. _____

Gene A. Zmuda, P.J. _____
CONCUR.

_____
                    JUDGE

_____
                    JUDGE

_____
                    JUDGE

---

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

49.